REGAN, Judge.
Plaintiff, Dorothy MoGee Moore, owner and operator of an automobile, instituted this suit against defendant, New Amsterdam Casualty Company, the insurer of Gervais F. Favrot Company, contractors of this City, endeavoring to recover the sum of $2,960.99 for personal injuries and property damage incurred by her, resulting from an accident on the rainy night of January 19th, 1948, at about 11:00 p. m., when her automobile was driven into an excavation in Poydras Street near the intersection of S. Rampart Street.
The excavation was created by Gervais F. Favrot Company pursuant to the terms of a contract with the New Orleans Public Service, Inc.
Defendant answered and denied the existence of any negligence on the part of the contractor, asserting that the accident was caused in/its entirety by plaintiff’s negligence, and then reconvened, as assignee of the contractor, for the sum of $160.30, representing damages to á “pump” which allegedly was pushed into the excavation by plaintiff’s automobile.
*767 The Board of Administrators of the Charity Hospital of Louisiana at New Orleans intervened for the sum of $4.50 for professional services rendered to plaintiff, as a result of the accident.
This case was consolidated with a similar suit arising out of the same accident in order to facilitate and expedite the trial thereof. The suit referred to is entitled Byrd v. New Amsterdam Casualty Co., La.App., 52 S.E.2d 770, both of which were decided -by us this day.
From a judgment in favor of plaintiff on the main demand in the sum of $1,660.99, dismissing the reconventional demand, and awarding the intervener the sum of $4.50, defendant prosecutes this appeal.
The record reveals that on January 19th, 1948, Gervais F. Favrot Company was engaged in making subterranean repairs in the inbound roadway of Poydras Street near S. Rampart Street and, as a result thereof, an excavation was created beginning about twenty-one feet from the Poy-dras Street neutral ground, which measured eight feet eight inches running parallel with S. Rampart Street and ten feet two inches running parallel with Poydras Street, having a depth of eight feet. Favrot’s employees terminated their activities at four thirty p. m. on the day in question, but prior thereto had endeavored to protect the excavation by virtue of the erection of a barricade composed of four trestles, colloquially known as “horses”, four feet high with 2" x 6" lumber attached rectangu-larly around the top thereof. A lighted red lantern was nailed to each corner of the barricade. Within this barricade was a mound of earth estimated at about one and one-half yards and twenty-six inches high, the sides of which tapered to the edges and between the mound of earth and the excavation the “pump” was situated.
It is conceded that, several hours prior to ■ this accident, an unidentified motorist “struck” or “sideswiped” the barricade. At this point in the testimony a sharp factual dispute arose.
Plaintiff and the guest passenger in her automobile, Earl Byrd, contend that the barricade was knocked down and that the lanterns, if they were ever lighted, were thus extinguished.
Defendant, in opposition thereto, maintain that the left or Poydras Street neutral ground side of the barricade had been “sideswiped”, but that it was not “knocked down”; that the barricade was leaning on an angle and that the two red lanterns on the right or sidewalk front and rear section of the barricade continued to burn after this accident.
In any event, with this factual orientation of the excavation in mind, the record reflects that plaintiff was driving in approximately the second or third traffic lane of Poydras Street, moving at a speed of fifteen or sixteen miles per hour, in the general direction of the river. The street was wet by virtue of a “drizzling rain” and plaintiff’s vision was partially “impaired” due to the rain and the reflected light emanating from the general vicinity of the situs of the accident. As she approached the intersection of Poydras and S. Rampart Streets, she observed the traffic semaphore for a favorable signal and, as she did so, her automobile was driven into the excavation resulting in the personal injuries and property damages, which are the subject of this suit.
Neither plaintiff nor her guest passenger, Byrd, noticed the existence of a barricade or excavation before her automobile was driven therein. Plaintiff contends, as stated hereinabove, that several hours prior to this, a motorist struck the barricade and, if there were any warning lights burning, they were thus extinguished; that the contractors possessed knowledge relating to the fact that “barricade lights” are frequently stolen, damaged or extinguished; that Poy-dras Street is a heavily travelled thoroughfare and, because of the “type of neighborhood where' the accident occurred”, it was incumbent on the contractors to furnish a watchman to observe that the barricade remained intact and adequately lighted, especially on the night of the accident because of the “bad weather” and resulting “poor visibility.”
Defendant, on the other hand, maintains that the contractor was free of negligence; *768 that the accident was caused by virtue of the negligence of the plaintiff, the operator of the automobile “in not having her automobile under control * * *; in driving at a fast rate of speed and failing to see what she should have seen had she been keeping a proper lookout”; that based upon its interpretation or analysis of the police report in that section thereof relating to “condition of driver and pedestrian”, the investigating officer checked “ability impaired” and, therefore, defendant “averred that the driver * * * was under the influence of liquor and was in no condition to be driving said automobile.”
We have carefully analyzed all of the testimony appearing in the record and we are of the opinion that Favrot’s employees terminated their activities at 4:30 p. m. on the day in question, but prior thereto had endeavored to protect the excavation by virtue of the erection of a barricade which we have found, as a fact, to be inadequate to guard and encompass such an obvious and dangerous hazard. The component parts of the barricade consisted of four trestles colloquially designated as “horses”, four feet high with 2" x 6” lumber attached rectangularly around the top thereof, and a lighted red lantern fastened to each corner of the barricade, but that neither the barricade nor the lanterns were there when plaintiff drove her automobile into the excavation or, if some segment of the barricade was existing at that moment, it was insufficient to warn plaintiff of the excavation.
Elton Sultan, a porter employed at a restaurant and bar located in 503 S. Rampart Street, which forms the corner of Rampart and Poydras Street, testified that about nine o’clock p. m., on the night of the •accident, a truck had struck the barricade knocking it and the lights appended thereto down, thus extinguishing the lights, and that at about ten forty-five p. m., while he was working in the restaurant, he saw and heard the plaintiff’s car fall into the excavation; that he had a clear vision of the situs of the accident through a large glass window forming the Poydras Street side of the restaurant.
Defendant attempted to offset the very positive testimony of Sultan by introducing into the record the rhapsodic testimony of Nicholas Freeland, also an employee of the restaurant and bar located in 503 S. Rampart Street, who testified that a trailer truck had struck or “sideswiped” the barricade causing it to lean “over at a very good angle” or “it was leaning badly” but that two lanterns remained lighted on the front and rear portion of the barricade nearest the sidewalk of Poydras Street. He further testified that when he left his place of employment at 11:15 p. m. and which he said was before the accident in. question occurred (and in this he is obviously in error because the time of the accident has been established as being between the hour of 10:45 and 11:00 p. m.) that he "did not pay any attention to the condition (of the barricade) when I left the store.” He further testified that at “Eleven o’clock I wouldn’t say that the lights were burning because I didn’t pay any attention to it * * * the lights were burning after the red truck hit it * * * ”
Daniel Barrett, one of the police officers who investigated this accident, and who furnished the information contained in the police report, testified that he arrived at the scene thereof at 11:15 p. m. and found a Chevrolet Coupe “down in an excavation in the street at Poydras Street near Rampart” at a “45 degree angle”; that no barricade of any sort existed at that time nor were any red lanterns burning; that he examined the lanterns which he found and by virtue of his fifth sense of “touch” concluded that they were cold; that he could not remember seeing “any mud embankment” in front of the excavation; and that he and Officer Cimino, who had accompanied him to the scene of the accident, re-erected the barricade which previously had been “erected of light scrap wood, part of it nailed to resemble a barricade” and relighted the lanterns; that out of an abundance of caution and in order to obviate a repetition of this accident, they revisited the scene thereof several hours later and noticed that the lanterns “were blown out by the wind.”
*769 Officer Victor Cimino corroborated the testimony of Officer Barrett in all of the above pertinent particulars.
In view of the foregoing testimony we are of the opinion that the barricade erected by the employees of the contractor was inadequate to warn and protect vehicular traffic from the great danger which the excavation had created. A barricade, by virtue of its very nature, should be an obstruction and actual impediment to travel, not merely a warning. Flynn v. Egan, 12 La.App. 128, 124 So. 598.
We now turn our attention to a consideration of the existence of any negligence on the part of the plaintiff herein and, in doing so, we are fully cognizant of the general rule that it is the duty of the operator of an automobile to maintain a speed sufficiently slow and to have such control of her car that she could stop within the distance in which she could plainly see an obstruction or danger ahead but, by the same token, that rule has no application to a set of circumstances where a dangerous situation, which the operator of the automobile had no reason to anticipate or expect, suddenly emerges in front of the motor vehicle.
The evidence reveals that it was a rainy, windy, misty night and that ordinary or usual visibility was obscured due to the inclement weather. Plaintiff testified that having taken cognizance of these conditions, she was proceeding cautiously at a speed of fifteen or sixteen miles per hour, in second gear, intermittently observing the traffic semaphore for a favorable signal and the road before her car when, without any warning whatsoever, she plunged into this hazardous excavation. Plaintiff’s testimony is corroborated in all essential respects by her guest passenger, Byrd.
The most serious allegation of negligence urged on behalf of the defendant is to the effect, that based upon its interpretation or analysis of the police report under that section thereof relating to “condition of driver and pedestrian”, the investigating officer checked “partially impaired” and, therefore, defendant concluded that the driver “was under the influence of liquor and was in no condition to be driving said automobile.”
Plaintiff testified that she was not only sober on the night of the accident, but that she “never drank” and this is corroborated by her guest Byrd.
Officer Barrett testified that the section of the police report relating to “condition of driver and pedestrian,” wherein “ability impaired” was checked was only intended to indicate that plaintiff’s visibility was impaired because of the inclement weather prevailing at the time of the accident; and it was not his intention to convey the unjustified impression that either plaintiff or Byrd were intoxicated; that when he interrogated Miss Moore and Byrd at the Charity Hospital, a short time after the accident, he ascertained that they were spber.
It is our opinion that the plaintiff was entirely free of negligence.
As a consequence of the accident plaintiff suffered a lacerated wound one and one-half inches long on the right lower lip which required three sutures; a contused elevated wound on the inside of the lower lip; shock and contusions to her left shoulder and left part of her chest.
Dr. Shirley Lyons, who was plaintiff’s attending physician after she had received emergency treatment at the Charity Hospital, testified that the lacerated wound was in that part of the lip, the “buccal membrane”, which “gives the nice appearance to the lip” and that after the removal of the three sutures it left “a small scar.” Upon being interrogated as to whether the scar was disfiguring, Dr. Lyons testified “that if it was on my wife or child, I think I would consider having plastic surgery remove that and get rid of that little scar” and that “you can notice it with all of her makeup.”
Dr. Lyons rendered a bill for professional services to Miss Moore in the amount of $75.00, which she testified she had paid and which we do not find to be excessive.
In addition to the foregoing personal injuries, plaintiff sustained property damage *770 to her automobile to the monetary extent of $385.99, which she has adequately proven.
The judge, a quo, awarded plaintiff $1200.00 for personal injuries, $75.00 for medical expenses and $385.99 for damages to her automobile or a total of $1660.99, and we are of the opinion that this amount is not excessive.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.