ELLIS, Judge.
At -ahout,5 A.-M:. on the 13th of March, 1954 the defendant, with two young ladies as , his guests, was traveling east on highway 190 just west of the town of Elton when -he collided with an automobile, being driven in a westerly direction on said highway by the plaintiff Rizley, with whom the plaintiffs Mersh'on and Meade were riding as1 guest passengers. Also a passenger was First Class Sgt. Kirk, who filed no suit.
As a result of the collision the three suits were filed against R. V. Cutrer and his public liability insurer, the All State Insurance Company. The’' issues' in all are essentially the same except as to -quantum.
It was alleged'that the head-on collision occurred in-the plaintiff’s-lane of. travel and was caused solely by the -.negligence of R. V. Cutrer, whereas the answer of the. defendants admitted the occurrence of the ac- *640 cídent denied any negligence on the part of .the defendant Cutrer and, in the alternative, plead contributory negligence on the part of plaintiffs.
The Lower Court, in a well written opinion which considered in detail the evidence .and with a full discussion of the law, rendered judgment dismissing plaintiffs’ suits at their costs. It is from this judgment that the plaintiffs have appealed.
The pertinent facts shown by the record .are as follows: The defendant, R. V. Cut-rer, got off from work at his job with Jefferson Chemical Company at , Port Neches, Texas, at approximately 10:45 P.M. on Friday, March 12, and went to his Rome and slept from about 11 P.M. to 2:30 A.M. March 13, and then drove to Groves, 'Texas, where he picked up his two passengers, viz.: his cousin, Flora Jean Miller •and her friend, Betty Webb. They left the latter town at about 3 A.M. going to KLent-•wood, La., and it is shown that both young ladies were awake until they reached Kin■der, La., and slept from then until the accident which occurred at approximately 5 A.M. either just inside or just outside the recently extended western city limits of the Town of Elton. The Lower Court found mo negligence as to either party resulting from excessive speed at the time of the accident, and with this finding of fact, we .agree. It was dark up to the time of the .accident and both vehicles had their headlights burning. While visibility was apparently good, it had been drizzling rain periodically.
The Lower Court has described Highway 190 in detail in the vicinity of the collision and we quote:
“This highway is an 18 foot wide concrete road at the point where the headon collision occurred. However, .about 2S0. feet west of the point of impact, the highway was of a different width. It seems that in 1950 some culverts were installed under this portion ■of Highway 190. At that time, for some unknown reason there was an ■extra concrete strip added to both sides of the road. These strips are partly shown in exhibits D-2 through and including D-5. These extra concrete strips are about 500 feet in length and there are no warnings posted to show the beginning and end of the strips. The extra strips do not start or end gradually, but both at the beginning and end, each strip is about one foot wide. From that point it widens so that in the middle, each strip is about two feet wide. This makes Highway 190 approximately 22 feet wide at the middle of the 500' strips. Then the highway narrows for the next 250 feet so that at a point approximately 250 feet east of the center of the. strip (also 250' west of the point of impact), Highway 190 is 20 feet wide. There the strip suddenly ends so that the concrete portion of Highway 190 from that point on is only 18 feet wide. At the end of the 20 foot wide portion of the highway, there is not necessarily a drop off, for the dirt shoulder of the highway gives Highway 190 an additional width of approximately six to eight feet on each side. However, all cars traveling so that the right wheels are on the added concrete strip, run off the concrete where the Highway suddenly narrows and the dirt shoulder usually presents a slight drop off at that point. On the morning when this accident occurred, these dirt shoulders ‘were very wet and slippery,’ according to the State Police.”
The only parties who actually saw the accident were the drivers of the two cars involved, however, Sgt. Rizley could not estimate how fast he had been or was driving at the time of the accident, would not be specific as to whether he had been drinking or not and, as the District Judge stated, “did not even know where he and his passengers, has been since they left Camp Polk at 9 P.M. Friday night.” The only thing that this driver was certain about was the fact that he was in his lane of travel at the time of the collision, and that it happened so fast that • it was impossible for him to avoid the accident.
*641 Of the defendant Cutrer’s testimony, the district court found the following:
“ * * * Defendant explains, the details leading up to the accident as follows: ‘Well, we came through Kinder, and as soon as we got around the curve, and out of the city limits of Kinder we started meeting trucks, and as we were meeting these trucks, they were on their side of the road, there’s no doubt, but beings the pavement was narrow, I presume they was holding as close to the center as they could, anyway it made the road rather crowded, the way it was built, we came on. to this spot where I noticed I had a little more room to move over. So I moved over. It was unbeknowns to me that the road had been widened in that particular spot, and there wasn’t any markers at all placed there, and when the pavement stopped at a square end, well I ran off the square end of the pavement. That extra addition that had been added.’
According to defendant, it was' drizzling while he drove from Kinder to Elton and the headlights of these trucks cut his vision down. He estimated that he was driving between 45 or 50, but didn’t check his speedometer after Kinder. At the time Cutrer reached this widened part of the road, there was a truck coming and he eased over on the widened road to give the truck more room. After defendant ran off the square end of the pavement his car skidded out of control. He doesn’t know which lane of traffic he was in at the time of the collision. It is known that plaintiff’s vehicle remained heading west on the highway in its proper lane of traffic after the accident. Defendant’s vehicle was against a tree partly in the north ditch and partly on the north shoulder of the road. The State Troopers expressed their opinion based on the location of the cars and the debris that the point of impact was in the north lane of traffic. It is to be noted that some of the debris had been picked up and other bits had been scattered by passing traffic which went through the south lane before the Troopers arrived. This court finds as a matter of fact that the point of impact was in the plaintiff’s lane of traffic — the north lane.”
In view of the fact that the collision occurred in the north or westbound traffic lane, which was the plaintiffs’ lan'e of travel, it is argued by counsel for plaintiffs and conceded by counsel‘for defendant and followed by the District Judge that the plaintiffs had shown a prima facie case of negligence on the part of defendant Cutrer. The Lower Court, however, found that the defendants had refuted the prima facie showing of negligence by establishing a legal.reason why the vehicle driven by Cutrer was on the left-hand side of the road, citing the following authorities:
“Blashfield, Cyclopedia of Automobile Law and Practice, Volume 4, Part 2, Section 2702, at pages 205-208 which states:
“ ‘As supplemental to, or a corollary of, the rule laid down in the preceding section, it may be stated as a rule of general application that, while a presumption of negligence arises against a driver of a motor vehicle found on the wrong side'of the road at the time of a collision with another traveler, which, if not excused by the circumstances shown, is sufficient proof to support recovery by one injured by such violation, and while an unexplained collision between meeting vehicles on a highway is conclusive .of carelessness against the party on the' wrong side of the middle of the traveled part of the road, such a presumption is rebuttable and only casts the burden of justifying his position upon the driver upon the wrong side of the road.
“ ‘A motorist’s presence on the wrong side of the road is excusable if, without fault on his part, his machine skids - across the center line of the street, or he turns to avoid a.threatened. collision, but usually it is a question of fact for the jury whether a motorist is negligent in being on the *642 wrong side of the street, where evidence is presented in rebuttal of the presumption arising by such fact.’
“Huddy, Cyclopedia of Automobile Law, Volume 3-4, Se-ction 109 at page 1-76, which reads as follows:
“ ‘The failure of the driver of a motor vehicle to keep to the right side of the highway is excused where, without fault on his part, the machine skids across the center line of the road, but where skidding results from negligence, the driver is liable.’
“Giglio v. Toups, [La.App.] 1st Cir., 1949, 192 So. 553—The fact that a car suddenly pulled in front of the driver, making him apply his brakes on slippery pavement, was a justifiable reason for skidding to the left side of the road;
“Hunt v. Jones, 1st Cir., 1930, [14 La.App. 520] 130 So. 138—The fact that a car stopped suddenly in front of a defendant, as a result of which defendant skidded to the left, was a justifiable reason so as to rebut the inference;
“Smith v. Interurban Transportation Co., 2 Cir., 1927, 5 La.App. 704—A car pulling out in front of a bus from a private driveway, causing the bus to pull to the left, constituted a justifiable reason;
“Smith v. Rouche, [La.App.] Or. Cir., 1934, 153 So. 485 [487]—A car skidding to the left side of a slippery surface which the driver should not have anticipated, sufficiently explained his presence on the left hand side of the road;
“Vaccaro v. Favrot, Or.Cir., 1929, [13 La.App. 120] 125 So. 296, 297, in which the following language is found:
“ 'The excuse which is offered is that, as the vehicles were approaching each other, each on its own side of the road, a small car came out from behind the plaintiff’s and passed it in the same direction; that the driver of the defendant’s autotruck, thinking to avoid' collision with the small car, which seemed imminent, put on his brakes strongly and suddenly; that it was raining at the time, and the pavement was wet; and that the application of the brakes caused the truck to skid over against the plaintiff’s car.
“ ‘There is no doubt that, if the facts would be found as the defendant’s witnesses state them, the defendant’s driver would be free of fault, for his acts would, in that case, have been forced upon him by necessity.' ”
The Lower Court then concluded that the defendant’s presence on the north side of the highway was caused solely by the termination of the portion of the pavement upon which his right wheels had been traveling, when “the highway ran out from under him.”
The District Judge then found that there was no negligence upon the part of defendant Cutrer by virtue of his having failed to observe the end of this concrete slab, being controlled by the exception to the general rule that one is required to have his vehicle under such control as to be able to stop within the distance covered by his headlights, and therefore, one who strikes a discernible object on the highway at night is presumed to be guilty of negligence. The Lower Court very aptly cited the case of Hogg v. Department of Highways, La.App., 80 So.2d 182, 185, and quoted therefrom as follows, and stated that the present case is distinguishable from those cited by plaintiff on the same basis explained in the Hogg case:
“A legal distinction is found in a motorist’s liability between a case where the object projects above the surface of the highway and a case where the cause of the accident is a hole or depression below the surface. In either case an important factor is whether or not the accident occurs at night. Arceneaux v. Louisiana Highway Commission, La.App. 1941, 5 So.2d 20. In Moore v. New Amsterdam Casualty Company, La.App. 1951, 52 So.2d 766, the court stated:
*643 “ 'It is the duty of the operator of an automobile to maintain a speed sufficiently slow and to have such control of his automobile that he can stop within the distance in which he could plainly see an obstruction or danger ahead but the rule has no application where the motorist has no reason to anticipate or expect that a dangerous situation will suddenly emerge in front of the vehicle.’
“Hogg testified that he did not see the defective condition of the bridge until he was within eighteen feet of it and when it was too late for him to avoid the accident. He said in attempting to avoid the piece of concrete he struck the hole. The pavement was •wet at the time and he was traveling about forty-five miles per hour. The weather was clear at the time. The record, in our opinion, does not indicate Hogg was traveling at an excessive rate of speed under the existing conditions, or that he should have observed the hole in the pavement sooner.” (Emphasis added by Lower Court.)
See also Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A.1917F, 253; General Securities Co., Inc. v. City of Hammond, 11 La.App. 306, 123 So. 399; German v. City of New Orleans, La.App., 3 So.2d 181; Reeves v. State, La.App., 80 So.2d 206.
In German v. City of New Orleans [3 So.2d 182], supra, the Court stated:
“Counsel for defendant cites several cases in which it has been held that the driver of an automobile is negligent ■ when he operates it at such speed as to render it impossible that it be stopped within the distance illuminated by its headlights. But this rule is not without exception, and it has never been held that under no circumstances may an automobile owner recover for damage sustained by his car if it appears that the operator could have stopped before striking an obstruction, or before running into a hole in the roadway. All of the surrounding circumstances must be investigated, and from them it can be determined whether the failure of the driver to stop constituted negligence on his part. In this connection we have always recognized the distinction between striking an obstruction extending above the surface of the highway, which obstruction should be illuminated by headlights, and the running into a hole or depression in the road against which the lights did not shine and which might be no more noticeable than a shadow on the surface of the road.”
The District Court also cited the following cases:
“Stafford v. Nelson Bros., 1st Cir. 1930, 15 La.App. 51, 130 So. 234—Driver relieved of negligence in striking an excavating machine by reason of being blinded;
“Evans v. Kirby, [La.App.] 1st Cir. 1951, 53 So.2d 412—In this case, the driver was not found negligent in colliding with an unlighted truck on the road, by reason of the fact that he was blinded by oncoming lights;
“Great American Indemnity Co. v. Cormier, 5 Cir., 1951, 187 F.2d 107—Again driver relieved of negligence in colliding with unlighted truck, where he was blinded by oncoming lights;
“Carter v. LeBlanc Lumber Co., [La.App.] 1st Cir. 1948, 37 So.2d 471—The Court of Appeals found that the character, nature and size of the object must be considered, and found that the driver was not negligent in colliding i with an unlighted truck;
“Gaiennie v. Cooperative Produce Co., Inc., 1940, 196 La. 417, 199 So. 377—his is a Supreme Court decision relieving the driver of negligence in colliding with an unlighted truck, although he was temporarily blinded by oncoming lights, and which is cited often by the appellate courts.
“Dodge v. Bituminous Casualty Corp., [La.App.] 1st Cir. 1947, 33 So.2d *644 95 — Another case in which driver was not negligent in striking an unlighted truck.”
and logically reasoned that if the law excuses a party from negligence in striking a truck or trailer under the facts and circumstances shown in the above cited cases, that the defendant Cutrer cannot be held negligent under the facts in this case for failing to discern the unmarked sudden end to a concrete strip which had been added to the highway and which had been left unmarked as to any kind of sign to warn or give notice to the public of its ending. We believe that the .District Judge was' correct in his finding of fact, his application of the proper law and his conclusions therefrom. We will, however, briefly discuss the objections to the facts and conclusions reached by the Lower Court made by counsel for plaintiffs in their brief on appeal.
It is contended that the trial court was in error in holding that the sole cause of the accident was a “peculiar road condition” or a road condition which Cutrer had no way of anticipating. They point to the testimony of Cutrer to the effect that he did not know what happened and a denial that his car ever actually left the highway, and the fact that' Cutrer stated that he noticed he “had more room”, yet he contended that he did not know the road had been widened. It is true that Cutrer could not have known what happened until after the accident, and there is no testimony to refute Cutrer’s version of what happened. It is clear that the accident was caused by his absolute inability to see the end of this narrow strip of pavement, and under the facts such failure did not constitute negligence on his part. His testimony that he had more room and that he did not know the road had been widened is immaterial for even had he realized that the road had been widened he would not be chargeable with the knowledge of expectation that it would suddenly and abruptly end without any warning or markers. He could have accepted the widening of the road with the same assurance that he accepted the width of the highway from Kinder to the point of the accident.
Again counsel for plaintiffs points to Cutrer’s statement that he first observed plaintiff’s vehicle when they were “right on one another”, yet in his discovery deposition he stated that he had first seen the plaintiff’s vehicle when it was approximately 500 feet behind an oncoming truck, and counsel argues that this contradiction is especially important in view of his testimony that he could not see the end of the added “strip” because of a truck which he was meeting “just as the pavement ended.” Whether he was blinded by truck lights or not, under the conditions, the ending of this narrow, added, concrete strip was not so discernible that it would constitute negligence on the part of Cutrer. for having failed to see it, and particularly is this true under the jurisprudence heretofore cited.
Counsel for plaintiffs further argues that there was no proof other than the testimony of Cutrer that he ran off the road where the strip of concrete ended. Cutrer’s testimony is correctly accepted by the District Judge as being true for there is nothing in the record to dispute it and no reason shown to disbelieve it.
It is next argued that Cutrer gave no good reason as to why he was traveling “tight wire” fashion on this narrow strip, in other words, they state that Cutrer testified he had “more room to move over” so he “moved over.” It is argued that Cutrer could not attribute his moving over to a sudden emergency. It is .not necessary for a sudden emergency to exist before one can use the full width of the pavement in his lane of travel. From the facts, it was perfectly natural, when the defendant was passing these trucks or when he saw the plaintiff’s vehicle approaching, for him to pull further away from the center line. He had every right to use the added strip and not to expect it to end abruptly as it did without any warning signs.
This added strip constituted a part of the concrete highway and motorists could and would be expected to use it.
Finally, counsel for plaintiffs contend that it was not shown that there was actually a defect in the highway and, in the *645 alternative, that such defect if it existed was a proximate cause of the accident. The record is full of facts justifying the conclusions reached by the trial judge and his judgment is clearly not manifestly erroneous, in fact, it is, in our opinion, correct. Not only do we have the testimony of the witnesses that the defect did exist and had caused other accidents but there are pictures which show this dangerous defect where the added concrete strip abruptly ended without warning, allowing the right wheels of a motor vehicle to somewhat drop or at least run onto the shoulder of the highway. In the present case it would appear that the front wheel ran off the end of this added concrete strip and as a result the rear wheel struck the edge of the original 18 foot concrete slab causing the car to veer suddenly into the path of the oncoming automobile of the plaintiffs.
Negligence and liability in this case, if any, must be charged to the State of Louisiana, and it would be necessary to obtain an Act of the Legislature before such a suit could be filed.
For the reasons assigned, the judgment of the lower court is affirmed.