O'NIELL and DAWKINS, JJ., dissent, and O'NIELL, J., hands down reasons. See 82 South. 290.

========

(82 South. 360)

No. 23089.

SCHICK v. JENEVEIN.

(June 2, 1919.)

*(Syllabus by Editorial Staff.)*

1. MUNICIPAL CORPORATIONS ⊜⇒705(2)—LAW OF THE ROAD.

The "law of the road" in the United States, based upon a well-recognized custom and usage, requires that a driver shall turn to the right when meeting another upon the public highway.

2. MUNICIPAL CORPORATIONS ⊜⇒705(2)—LAW OF THE ROAD.

The law of the road requiring that a driver shall turn to the right when meeting another upon the public highway is not an inflexible one, but must be followed unless circumstances and common prudence dictate a different course.

3. MUNICIPAL CORPORATIONS ⊜⇒706(3)—LAW OF THE ROAD — PRESUMPTION OF NEGLIGENCE.

Where one is upon the wrong side of the traveled portion of a road or has not conceded *to the other party whom he has attempted to pass that* portion of the highway to which he is entitled and a collision occurs, the burden is upon him who so violates the rule to show that his act was not the proximate cause of the injury, or that there were justifiable circumstances which excuse his conduct.

4. MUNICIPAL CORPORATIONS ⊜⇒706(3)—COLLISIONS—CONTRIBUTORY NEGLIGENCE.

The plea of contributory negligence in an action for damages arising out of collision of vehicles on a highway is a special defense in which the defendant carries the burden of establishing it by a preponderance of the evidence.

5. MUNICIPAL CORPORATIONS ⊜⇒705(10) — STREETS—COLLISIONS—CONTRIBUTORY NEGLIGENCE.

One driving a horse on a narrow city street was not guilty of contributory negligence in winding the lines around his wrists in his effort to hold and check the animal; he not being bound to foresee that another would violate the law of the road and strike his front wheels with such force that with the movement and weight of his own animal his harness would break and pull him from his wagon.

6. MUNICIPAL CORPORATIONS ⊜⇒705(2)—COLLISION IN STREET—LAW OF THE ROAD.

It is the duty of a driver upon a highway in a city to turn seasonably to the right, that is, at a time when it would be effectual, and he could not wait and take chances, and he is not relieved of liability simply because the wet condition of street railroad rails in the street by reason of their wet condition may have contributed in some measure to the accident by causing the rear wheels of his wagon to skid.

7. DEATH ⊜⇒95(2)—DAMAGES—AMOUNT.

$5,000 *held* the proper measure of damages for the death of a person 68 years of age.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Christina Mattern, widow of Louis Schick, against Joseph Jenevein. Judgment for defendant, and plaintiff appeals. Judgment appealed from annulled and reversed, and judgment ordered in favor of plaintiff.

Dart, Kernan & Dart, of New Orleans, for appellant.

Dinkelspiel & Davey, of New Orleans, for appellee.

DAWKINS, J. While it is true, as indicated in our original opinion herein, that the testimony is conflicting, the witnesses for plaintiff and defendant ascribing the fault which occasioned the collision to the other side, instead of the one for which they were respectively sworn, and that a larger number of witnesses were sworn for defendant than for plaintiff, yet, when we come to read the testimony of the defendant himself, he virtually admits that the deceased had complied with the "law of the road," and that the collision occurred as the result of his (defendant's) inability to get his rear wheels from between the street car tracks before the wagons came together. We quote the testimony of defendant (page 109 et seq. of the record), on direct examination as follows:

"Q. What portion of the street did you occupy?

"A. I was coming up the track, and when I seen Mr. Schick, I pulled out towards back of town, and had my two front wheels out, and my hind wheels skidded, and Mr. Schick run into my hind wheels with his front wheels.

"Q. Did you see Mr. Schick previous to the accident?

"A. I seen him coming down Chippewa street.

"Q. How was he going?

"A. Pretty fast gait; he had the lines wrapped around his wrist.

"Q. What portion of the street did he occupy?

"A. He was occupying the whole track like I was.

"Q. Did you notice him coming fast?

"A. Yes, sir; pretty fast.

"Q. What did you do then?

"A. 1 pulled out towards back of town to give him the track, and so my hind wheels skidded, and he run into my hind wheels.

"Q. Did he pull out?

"A. No, sir; he had the whole half of the track.

"Q. Had he attempted to pull out?

"A. It don't seem that way.

"Q. When you first saw him, what portion of the track was he occupying coming down?

"A. The whole track.

"Q. Did he make an effort to turn out, or did you notice that he made an effort to turn out?

"A. He give me half the track, but he wouldn't give me the whole track, and my hind wheel skidded because the track was wet that day.

"Q. And where were your front wheels?

"A. Out of the track.

"Q. What were you doing at the time?

"A. I was trying to get out of his way with the wagon.

"Q. And the front portion of your wagon was where?

"A. Was out of the track by the oyster saloon.

"Q. Was any front portion of your wagon, the front wheels or your horse, on any portion of the track?

"A. No, sir."

The testimony otherwise shows that the deceased and the defendant were each driving spring wagons (one-horse) of about equal size and weight, the former's being loaded with lumber, and the latter's with grain. From the evidence of defendant quoted above it would seem clear that at the moment of the collision deceased had pulled over to the right side of the track and astride of the right rail going up town, but that the defendant had been unable to get his rear wheels from between the rails because of the fact that they were wet, and the wheels were skidding against the inside of the rails. There would appear to be no other reasonable interpretation of his testimony; for, if deceased had given him "half the track," and his rear left wheel alone had been skid-

ding against the inside of the rail on the river side of the track, then it would have been impossible for it to have collided with the front wheel of the deceased's wagon. The conclusion that defendant's rear wheels were occupying the whole of the space between the rails is further confirmed by the assertion in his testimony that deceased "wouldn't give me the whole track." If he were not occupying it all, why did he need the "whole track"?

With the condition of facts just recited, can the defendant be said to have been guilty of negligence in not turning out sooner, or because of the skidding of his wheels and his inability (owing to the wet tracks) to concede the deceased his lawful portion of the street in time to avoid the collision?

[1, 2] The "law of the road" in the United States, based upon well-recognized custom and usage (in some states upon statute), requires that the traveler shall turn to the right when meeting another upon the public highways. The opposite rule prevails in England, requiring that he turn to the left. Roads and Streets (Elliott) p. 618; Cyc. vol. 37, p. 270. This rule is not an inflexible one, but must be followed unless circumstance and common prudence dictate a different course.

"It is a general rule that one may travel upon any part of a highway not occupied at the time by another; but, if he meets another traveler, whom he desires to pass, or who desires to pass him, in either direction, there are certain rights and duties which each must observe in order to avoid collision. * * *

"The first and most important rule is that, in meeting, each party shall bear or keep to the right, instead of to the left, as in England. If there is no statute upon the subject, proof of this custom is not necessary, for the court will take judicial knowledge of it. * * *

"This rule requiring travelers who meet to pass to the right is not an inflexible one, and there may be circumstances requiring one to keep to the left in the particular case. Emergencies may arise where, in order to escape from danger to oneself or to prevent injuries to others, it will be not only excusable, but

perfectly proper, to temporarily violate the general rule. * * *"
Elliott on Roads and Streets, pp. 618, 619, and 620.

[3] Where one is upon the wrong side of the traveled portion of the road, or has not conceded to the other party whom he has attempted to pass that portion of the highway to which he is entitled, and a collision occurs, the burden is upon him who so violates the rule to show that his act was not the proximate cause of the injury, or that there were justifiable circumstances which excuse his conduct.

"One who violates the law of the road by driving on the wrong side of the way assumes the risk of all such experiments, and must use greater care than if he had kept upon the right side of the road. If a collision takes place, the presumption is generally against the party upon the wrong side. * * * But the mere fact that one is on the wrong side of the road, in violation of the law, gives another no right to neglect all precautions, and if, by the exercise of ordinary care, the latter might prevent a collision notwithstanding the fault of the former, but fails to do so, he has no cause to complain. Parties lawfully using a public street, however, owe to each other the duty of exercising ordinary and reasonable care, and each is justified, in the absence of anything to the contrary, in assuming that the other will so act." Id., 620 and 621.

See Cooley on Torts (2d Ed.) p. 799 et seq.
[4, 5] The plea of contributory negligence is also a special defense, in which the defendant carries the burden of establishing it by a preponderance of the evidence. The record shows that Chippewa street is narrow, and, while vehicles might readily pass thereon, it was necessary that each should bear rather close to the curb. We think it also fairly appears that the deceased, at the time of the collision, had gone as far to the right as he could with safety. His horse had become somewhat unmanageable, and in his effort to hold and check the animal he had tightened up his lines, and probably had some portion of them wound around his wrists.

But, under the circumstances, was this imprudent? Must he be held to have foreseen that defendant would violate the law of the road and strike his front wheels with such force that, with the movement and weight of his own animal, his harness would break and pull him from his wagon? We think not.

[6] The duty was upon defendant to turn seasonably to the right, that is at a time when it would be effectual; he could not wait and take chances, and, even though the wet condition of the rails may have contributed in some measure to the accident, still the evidence in the record has not cleared him of the fault which presumptively attaches to the circumstances in which he was found at the moment of the collision. See note to Buxton v. Ainsworth, 5 Ann. Cas. p. 148.

[7] In view of the earning capacity and advanced age of the deceased, 68 years, we think a judgment of $5,000 would work substantial justice between the parties.

For the reasons assigned, our former decree is set aside, and it is now ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled and reversed; and it is further ordered, adjudged, and decreed that the plaintiff do have and recover of defendant judgment in the sum of $5,000, with legal interest from judicial demand, and that the defendant pay costs of both courts.

MONROE, C. J., takes no part, not having heard the argument.