95 So.2d 139

Levert R. RIZLEY

v.

R. V. CUTRER and Allstate Insurance
Company.

No. 42950.

April 1, 1957.

Rehearing Denied May 6, 1957.

---

T. R. Broyles, J. L. Funderburk, Jr., Leesville, Herschel Knight, Jennings, for applicants.

King, Anderson & Swift, R. W. Farrar, Jr., Lake Charles, for defendants-respondents.

McCALEB, Justice.

At about 5:00 a.m. on March 13, 1954, an automobile being driven by R. V. Cutrer on Highway 190, just east of the town of Elton, left its proper lane of travel and careened into the north lane of the highway where it crashed headon with an oncoming vehicle being driven by plaintiff, Levert R. Rizley. Rizley and his passengers, Clarence Mershon and William F. Meade, sustained severe and painful injuries in the accident and they thereafter instituted separate actions against Cutrer and his liability insurance carrier, All State Insurance Company, which were consolidated for trial, the issues involved being substantially identical with the exception of the quantum of damages. The injured plaintiffs are soldiers and, at the time of the accident, they were heading in a westerly direction in the car driven by Rizley on their way back to Camp Polk, where they were stationed. Cutrer's automobile, with two young ladies as passengers, was approaching from the opposite direction and suddenly swerved into the north lane when Cutrer lost control of the car. The passengers in both cars were sleeping just prior to the impact and the only eye witnesses were the drivers of the cars involved.

The defense of Cutrer and his insurance company is that the accident was unavoidable, it being claimed that Cutrer's loss of control of his car was exclusively due to its running onto the earthen shoulder of the south lane of the roadway which was caused by the unexpected termination of a concrete strip bordering the highway for a distance of some 500 feet east from the town of Elton. It is said that the abrupt ending of this strip, which is two feet wide for 250 feet and then narrows to a width of one foot for another 250 feet east of Elton, presented an unusual and unforeseen hazard to Cutrer in his passage over the highway on the morning of the accident and that, when he reached the end of the strip and rolled over the earthen shoulder adjacent to the edge of the road, which was slippery and muddy due to the weather conditions (it was drizzling at the time), he unavoidably lost control of his car, being unable to keep it from slipping or skidding into the wrong lane of traffic where it collided with the oncoming automobile. Alternatively, it is pleaded

that Rizley and the occupants of his car were guilty of contributory negligence barring their recovery. After a hearing in the district court, there was judgment for defendants, the judge being of the opinion that Cutrer's testimony was sufficient to exonerate him from all blame. On appeal, the Court of Appeal for the First Circuit affirmed the judgment for substantially the same reasons given by the trial judge. See Mershon v. Cutrer, 85 So.2d 639. On application of Rizley and the other plaintiffs, we granted certiorari and the case has been submitted for our decision.

█ Since the primary cause of the collision was Cutrer's act in driving his car into that part of the roadway reserved exclusively for traffic proceeding from the opposite direction, a mere statement of the accident makes out a prima facie case of negligence against Cutrer and, therefore, it was incumbent upon defendants to show by clear and convincing evidence that Cutrer's sudden presence in plaintiff's traffic lane was due to unexpected and unforeseen circumstances over which he had no control and that he did not in any particular contribute to the mishap. See Schick v. Jenevein, 145 La. 333, 82 So. 360; Miller v. Hayes, La.App., 29 So.2d 396 and Noland v. Liberty Mutual Ins. Co., 232 La. 569, 94 So.2d 671.

Highway 190 at and near the point of the accident is a straight two-lane thoroughfare running east and west. The paved portion of the highway is 18 feet in width and is bordered by earthen shoulders of six to eight feet, ample to accommodate parked cars. Running east from the town of Elton, the paved portion of the highway has been supplemented by concrete strips which, as heretofore stated, are two feet wide for 250 feet and then taper down to a width of one foot for another 250 feet, where they abruptly end. However, at the terminal of the strip, there is no appreciable drop onto the earthen shoulder but there exists a depression which has been caused by the repeated contact of motor traffic with the shoulder of the road.

It was dark on the morning of the accident and all vehicles were using their lights. It was raining or drizzling intermittently causing the shoulders of the highway to be muddy and insecure. In his explanation of the accident Cutrer testified that, soon after driving through the town of Kinder, or about 10 miles west of Elton, he began to encounter heavy trucks approaching from the opposite direction; that it was still dark, a drizzling rain was falling and that the headlights from the oncoming trucks interfered to some extent with his visibility; that, during the 10 miles to Elton, he glanced once at his speedometer which showed that he was travelling between 45 and 50 miles per hour; that, since the passing trucks were being driven close to the center line, he

felt "rather crowded" and that, upon reaching Elton, he noticed the strip bordering his lane, which gave him a little more room, so he moved over and drove with his right wheels on the strip. However, Cutrer relates that, when his car approached the terminal point of the strip, he did not see it because he believes that he may have been partially and temporarily blinded by headlights of an oncoming truck and he indicates that he expected that there would be a posted sign notifying motorists of the end of the strip. He stated "When the pavement stopped at a square end, well I ran off the square end of the pavement." Although he was not sure whether his front wheels "fell off" the road and onto the shoulder, Cutrer says that he felt the back wheels go off the strip, at which time his car went out of control and swerved and skidded over into plaintiff's oncoming car.

On the foregoing testimony,[1] the trial judge and the Court of Appeal concluded that the defendants had successfully shown that Cutrer was without any fault in the premises and that the accident was solely attributable to the State Highway Department in not providing a safe road for traffic. And, to buttress their rulings, both courts relied on a line of jurisprudence which recognizes an exception to the general rule that a motorist travelling on a

highway at night must have his vehicle under such control so as to be able to stop within the range of vision of his headlights. This exception is that, where the driver's vision is impaired by fog, rain, smoke, blinding headlights or abnormal conditions, one will not be presumed to be negligent in striking unforeseen or unusual objects in the road which he has no reason to anticipate lie in his path. See Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377; Dodge v. Bituminous Casualty Corporation, 214 La. 1031, 39 So. 2d 720 and Vowell v. Manufacturers Casualty Insurance Co., 229 La. 798, 86 So.2d 909.

We think that the courts erred in their conclusions of fact and law. Primarily, it is to be observed that the line of cases which excuse a motorist from fault where he collides with an unlighted vehicle negligently parked in the highway at night or into obstructions in his own lane of traffic, are without any pertinence to the situation presented in this case. Those decisions, which we have cited above (and there are many others decided by the Courts of Appeal too numerous to mention), involved situations in which a plaintiff, injured by the primary negligence of a defendant who either placed the obstacle in the road or allowed a condition dan-

---

1. The trial judge found Cutrer's explanation to be supported by visual observations, past records of accidents and personal experiences which led him to believe that the abrupt ending of the strip presented a serious traffic hazard.

gerous to the travelling public to exist therein, was excused for his failure to observe the obstruction within sufficient time to avoid a collision by reason of its unforeseeable and unexpected presence in what could reasonably be presumed to be a safe and unimpeded lane of traffic. And, in all of them, the negligent defendant was pleading contributory negligence and shouldered the burden of proving such negligence by a preponderance of evidence.

Here, the situation is different because Cutrer, having caused the accident by leaving his own traffic lane, is presumed guilty of negligence and the onus rested on him to demonstrate that the accident resulted from such a state of unforeseeable circumstances beyond his control (and to which he did not contribute), that he could not extricate himself, despite the efficient use of all protective measures at his command. In other words, it was his burden to show that he was not guilty of any dereliction, however slight, which may have had causal connection with the accident. We say this because it seems only reasonable to resolve that a motorist owes to the travelling public the duty of remaining in his own lane of traffic and, when he undertakes to enter the lane devoted to approaching traffic, he must be held strictly accountable for all damages resulting therefrom unless he clearly exhibits that his conduct in no wise contributed to the accident. By this, of course,

we do not mean that such a motorist is the insurer of the safety of those injured in an accident such as the one in the instant case but only that, in order to be exonerated, he must establish his freedom from all fault by convincing proof.

In the case at bar, we think that the evidence submitted by defendants falls far short of that mark as a careful scrutiny of Cutrer's testimony makes it evident that he did not have his car under such control, prior to the accident, as was required by the circumstances of the occasion. Faced with unseemly weather conditions and oncoming trucks from the opposite direction, whose lights admittedly interfered with his vision, while travelling on a road which he found to be too narrow to comfortably accommodate the heavy trucks and his car, it was imprudent for Cutrer to continue to drive at an admitted speed of 45 to 50 miles per hour. We believe that a reasonably prudent man would have also anticipated and expected that the concrete strip, which began at the town of Elton and on which he was travelling, would not long continue and that it would come to an end soon after he passed the town.

It is doubtful that, if Cutrer had had his car under proper control, it would have slid across the roadway onto the opposite lane upon encountering the earthen shoulder of the highway at the point where the concrete strip terminated. Except for his

assertion that the shoulder was muddy, Cutrer makes no attempt to explain why he lost control or what measures were taken by him to keep the car from running into the other lane. Such a statement is wholly insufficient to exonerate him from fault (see Noland v. Liberty Mutual Ins. Co., supra) and it is just as reasonable to conclude that he lost control by a hazardous attempt to regain the paved portion of the road as it is to say that the car slid over from its own momentum despite the efforts of the driver to prevent it from doing so.

■ Since we find that Cutrer was at fault, we take note of defendants' plea of contributory negligence. Counsel for defendants suggest that Rizley, the driver of the car, and the passengers (who were all asleep) were intoxicated at the time of the accident and that, if Rizley had been maintaining a proper lookout, he could have avoided Cutrer's oncoming swerving automobile.

These contentions are not impressive. Initially, there is no evidence to substantiate counsel's claim that the occupants of the Rizley car were intoxicated. The evidence discloses that Rizley had consumed one beer and one bourbon and soda the previous evening or early that morning. Furthermore, the contention that Rizley and the other plaintiffs could have extricated themselves from the emergency created by the Cutrer automobile is, in our opinion, most unrealistic.

We conclude that defendants are responsible and, in accordance with the policy established by us in matters of this type (see Mataya v. Delta Life Insurance Co., 222 La. 509, 62 So.2d 817; White v. State Farm Mut. Auto Ins. Co., 222 La. 994, 64 So.2d 245, 42 A.L.R.2d 338; Herget v. Saucier, 223 La. 938, 67 So.2d 543 and Thomas v. Checker Cab Company of New Orleans, 229 La. 1079, 87 So.2d 605) the case will be remanded to the Court of Appeal for the fixing of the amount of damages to which plaintiff is entitled.

The judgment of the Court of Appeal is therefore reversed and the case is remanded to that court for further proceedings consistent wtih the views herein expressed. The defendants shall pay all costs.