104 So.2d 236 (1958)
Chester CARHEE, Plaintiff-Appellee,
v.
Charlie SCOTT et al., Defendants-Appellants.
No. 8814.
Court of Appeal of Louisiana, Second Circuit.
June 20, 1958.
Rehearing Denied July 11, 1958.
*237 Browne, Browne & Bodenheimer, Shreveport, for appellants.
Pickett & Pickett, Many, for appellee.
AYRES, Judge.
This is an action in tort. Plaintiff seeks to recover damages for personal injuries sustained, for physical and mental pain suffered, and for permanent disability inflicted upon him as the result of an accidental collision between two gravel trucks. Reimbursement of expenditures for hospital and medical treatment is also sought.
The accident occurred on State Route 174 between Zwolle and Belmont. This section of the highway was being graded and prepared for asphalt surfacing, in preparation for which native gravel or local iron ore was being spread as a base. A fleet of trucks was engaged in hauling this iron ore from a pit near Noble and dumping it on the roadbed to be spread.
The accident occurred August 2, 1956, about 8:00 o'clock A.M. The weather was dry, the newly prepared roadbed was dusty, and visibility was extremely limited, so much so that in daylight hours the trucks were driven with headlights on. The accident involved two of the trucks engaged on the aforesaid project, one was a Chevrolet truck owned by Herman Skinner and driven by plaintiff, the other was a GMC truck owned by Charlie Scott and driven by Henry Sheppard. The defendants are Sheppard and Scott and Scott's liability insurer, the Canal Insurance Company. The scene of the accident was from 75 to 100 feet east of a slight incline in the highway, which in the immediate vicinity was practically level and for some distance to the east straight.
The facts as to the occurrence of the accident may be briefly stated: Plaintiff Carhee was proceeding in an easterly direction towards Belmont with a load of five cubic yards of iron ore when he was met by the Scott GMC truck returning empty for another load. The trucks collided head-on on plaintiff's right-hand side of the road. This is admitted by defendant as well as established by the testimony of both drivers and as shown by the physical facts, such as the location of debris and broken glass following the accident. On coming to rest after the impact, the Chevrolet truck was headed at an angle of approximately 45 degrees off its right-hand side of the highway against an embankment a few feet beyond the roadside ditch line, which was more or less faint and indistinct at the time due to the incompletion of the project. The GMC truck came to rest also on the same side of the highway.
Negligence charged to defendant Sheppard is that he was driving (1) at an excessive rate of speed under the prevailing circumstances, (2) on the wrong side of the *238 road, (3) without keeping his vehicle under proper control, and (4) without maintaining a proper lookout. Identical charges of negligence were made against plaintiff, with the additional charge that immediately preceding the collision, and as a cause thereof, he was attempting to pass another vehicle on the crest of the hill.
During the trial in the lower court and in brief and in oral argument before this court, defendants urged as their principal and primary defense that plaintiff came over the hill on the wrong side of the road, confronting defendant Sheppard with an emergency, an apparent impending head-on collision in his lane of travel, in the face of which Sheppard swerved to the left and there collided with plaintiff's truck, which had suddenly returned to its proper side of the road.
On trial the district court exonerated plaintiff of any fault in causing the accident, rejected defendants' affirmative defenses and concluded that the negligence of defendant Sheppard was the sole cause of the accident. Accordingly, plaintiff was awarded $2,000 for physical injuries, pain and suffering and "residual" disability, $316 for medical expenses, and $68 per week from August 2, 1956, to October 15, 1956, inclusive, for loss of earnings. The defendants, who were solidarily cast, have appealed. Plaintiff has answered the appeal, praying that the judgment be amended by the allowance of future medical expenses, as well as damages for mental anguish and suffering and for loss of future wages, and by increasing the awards for physical injuries, pain and suffering and permanent disability, and for loss of wages.
The proof or admission that the accident occurred on plaintiff's side of the road establishes a prima facie case of negligence on the part of defendant's driver. The appropriate provisions of the Highway Regulatory Act, LSA-R.S. 32:232, provide:
"Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving the other for at least two hundred feet before meeting, one half of the main travelled portion of the highway."
In the application of this section of the statute to the facts of the instant case, the presumption is that defendant's driver was negligent in the operation of his vehicle. Where a motor vehicle is being operated on the wrong side of the road, or in the wrong traffic lane, or on that part of the highway reserved exclusively for traffic proceeding in the opposite direction, or where the driver has not conceded to the other party whom he is meeting or passing that portion of the highway to which he is entitled, and a collision occurs, the burden is upon him who so violates the rule to show his act was not the proximate cause of the accident, or there were justifiable circumstances which excused his conduct. Rizley v. Cutrer, 232 La. 655, 95 So.2d 139; Noland v. Liberty Mutual Insurance Co., 232 La. 569, 94 So.2d 671; Schick v. Jenevein, 145 La. 333, 82 So. 360; Miller v. Hayes, La.App., 29 So.2d 396.
It was, therefore, incumbent upon defendants to show, by a reasonable preponderance of the evidence that Henry Sheppard's sudden presence in plaintiff's lane of travel was due to unexpected and unforeseen circumstances over which he had no control and that he did not in any manner contribute to the occurrence of the accident. Rizley v. Cutrer, supra. The question is, have defendants sustained this burden of proof? The trial court concluded that they had not. Is there manifest error in His Honor's conclusions and findings of fact? We think not.
The testimony, corroborated by the physical facts, supports plaintiff's version and contention as to the occurrence of the accident. Only two persons witnessed the accidentthe drivers of the vehicles involved. Plaintiff testified he was "riding" as near the shoulder on his right-hand side of the highway as he could get; that his *239 speed was some 30 to 35 miles per hour; that he was preceded by another truck traveling some 200 yards in advance of his truck; that he never attempted to pass any other truck preceding the accident but that after he had reached the crest of the incline and was continuing down-grade, he saw defendants' truck, with lights on, coming up the hill on plaintiff's side of the road, and eventually veering to its left until its left front wheel was on the shoulder of the road. Whereupon, plaintiff only had time and opportunity to move slightly to his left but insufficient to avoid the collision. The impact, while head-on, was more or less to the right front of each of the vehicles.
Defendant recounts the events immediately preceding the accident. His version is that when he was a distance of about 100 yards from the point where the collision occurred he met a truck (this is corroborative of plaintiff's statement that he was following a vehicle about 200 yards distant), and that plaintiff's truck came over the hill on the wrong side of the road (but evidently not in the act of passing a truck on the crest of the hill because the forward truck, according to defendant's own testimony, was at least 200 yards away and which he, the defendant, says that he had met and passed at a point 100 yards to his rear). Defendant's driver further indicated that plaintiff's truck made such a sudden appearance on its wrong side of the highway and was so near in front that their driver was forced to cut "hard" to his left in an effort to avert a collision.
The defendant, Sheppard, was inconsistent in his version as to the manner in which the accident occurred. He first testified that the trucks did not hit head-on; that their right fenders bore the brunt of the impact, and then that his right headlight hit plaintiff's rear wheel, although next he says that plaintiff's headlight struck his truck near the center of the truck bed. However, he was not able to explain, by demonstration or otherwise, the possibility of the occurrence of the accident in the manner claimed. The trial court concluded it would have been a physical impossibility for the accident to have occurred in the aforesaid manner.
The defendants offered the testimony of Samuel Lafitte, Edwin E. Shaver and defendant, Charlie Scott, primarily for the purpose of supporting their contention that plaintiff occupied the wrong side of the highway at the time of and immediately preceding the accident. Lafitte, who says he arrived at the scene of the accident within approximately 20 minutes after its occurrence, testified finding and following plaintiff's truck tracks for some distance, "straddling" the center of the highway and leading directly to plaintiff's truck. Shaver was the driver of the forward truck followed by plaintiff. He testified he was preceding plaintiff with a load of native gravel and that he himself was traveling from 50 to 55 miles per hour when visibility had been reduced to only a few feet by dust which was so heavy a driver could not tell which side of the road he was on.
A member of the State highway police, Jack D. Brown, arrived at the scene of the accident soon after its occurrence and made an investigation of the accident. On making a search therefor, he was unable to find plaintiff's truck tracks except for a distance of some six or seven feet immediately behind the truck after it had come to rest. Brown further testified that due to the surface of the road and the traffic thereon the tracks were almost entirely obliterated. Brown's testimony as to finding the glass broken in the impact on plaintiff's right-hand side of the road is disputed by Lafitte, who says the glass was near the center of the highway.
The defendant, Charlie Scott, who arrived at the scene of the accident much later than either Trooper Brown or Lafitte, estimated that he arrived at the scene 40 to 45 minutes after the occurrence of the collision. He, too, testified that he found plaintiff's truck tracks at the top of the hill on plaintiff's left side of the highway, where he says plaintiff applied his brakes *240 and then "angled" to the right and eventually went into the ditch. The trial court expressed dissatisfaction with the testimony of these three defendant witnesses, commented upon their inconsistencies and inaccuracies, and stated he could place little credence in their testimony. Again, in His Honor's conclusions we find no manifest errorin fact, his conclusions appear eminently correct.
We are convinced from our own review of the record, as was the trial court, that the accident was brought about by the fact that defendants' truck was being operated on the wrong side of the road and in the path and lane of travel of plaintiff's truck, a portion of the highway, by statute and the rules of the road, reserved exclusively for traffic proceeding in a direction opposite to that in which defendant was traveling. From the established facts the conclusion is inescapable that defendants have failed to sustain their burden of proof that their driver's act was not the proximate cause of the accident or there were justifiable circumstances which excused his conduct. Accordingly, the defendants should compensate plaintiff for the damages and injuries sustained.
The question of quantum has been raised as an issue for determination in the appeal and the question must, therefore, be given consideration. Plaintiff contends the award is inadequate and should be increased. Defendants take the opposing view that the award was excessive and should be reduced.
By force of the impact of the collision plaintiff was thrown from the cab of his truck and landed in a sitting position in the middle of the road. His left arm and elbow were lacerated. Being unable to stand up, he crawled to the edge of the road and lay down. An ambulance was called and plaintiff was conveyed to the Sabine Clinic and Hospital, where he was immediately hospitalized and treated by Dr. Hubert L. Prevost for a period of 18 days, after which he continued under Dr. Prevost's treatment as an outpatient until October, 1956. Even thereafter the doctor was frequently consulted by plaintiff, for which no charges were made and no records kept. In addition to the injuries to his arm, plaintiff complained immediately of pain in his left hip and back, from which he testified on the trial of May 27, 1957, he continued to suffer; and that he had not been able to work or to resume the duties of his employment since the accident, and that he was at the time of the trial disabled so far as manual labor was concerned.
Dr. Prevost, a surgeon as well as a general practitioner of medicine, testified that plaintiff was placed under his professional care on the date of the accident when he was brought by ambulance to the hospital. After ascertaining there were no injuries to the spinal cord or immediate danger to life or limb, the lacerations of the left arm were sutured and x-rays taken to determine the existence of any bone fractures, if any. The x-rays were negative in this respect. Plaintiff was then placed in bed and administered a heat treatment to the area of tenderness in the lower back and the left buttocks. After his release from the hospital, the Doctor testified that he saw plaintiff at intervals and that plaintiff had not recovered from the injuries. On the date of trial the Doctor expressed the opinion plaintiff was still suffering a residual injury or hematoma on his left buttock as well as an injury to his back, as evidenced by tenderness in that area, pain from which was manifest on local pressure and manipulation. The injury to the left buttock was described as a residual pseudocyst, a cyst-like cavity within a fatty layer and was filled with a liquified blood clot, which from a bruise or bump, would likely become aggravated. The remedy, so the Doctor stated, as the condition would not heal otherwise, was to open the cust through surgery and pack it with gauze in order to permit it to heal from the depth of the wound. For the performance of this operation and plaintiff's recovery so as to return to his normal occupation a period *241 of from four to eight weeks would be required, the surgical and hospital fees and expense for which the Doctor estimated at from $350 to $500. The Doctor also expressed the opinion that, at the time of the giving of his testimony, plaintiff was not able to perform heavy work such as driving a gravel truck, nor would he be able to resume such activities without the operation for the hematoma of his buttock. In making an estimate of the additional period of plaintiff's disability, judgment was reserved due to the probable extended length of plaintiff's disability from the injury to his back.
Dr. Ford J. Macpherson, an orthopedist, examined plaintiff under date of May 24, 1957, and found tenderness which, on manipulation of the limbs, produced pain in the lumbar-sacral region of the back, also pain in his left buttock and a diagnosis was made of a settling of a severe nature in the lower lumbo-sacral joint. The Doctor was positive that, as of the date of his examination, plaintiff was not able to perform hard manual labor. For treatment of the condition that he found in plaintiff's back, the Doctor suggested and advised that plaintiff be placed in a heavy back brace, the wearing of which, for a period of 30 to 60 days, might give plaintiff such relief as to permit him to return to work.
Plaintiff, however, was examined on behalf of defendants by Dr. T. N. Oxford, another orthopedist. Dr. Oxford diagnosed plaintiff's condition as a "sprain, old, healed, of the lumbar region of the spine," but found nothing indicative of any disability or that would prevent plaintiff from resuming hard manual labor.
Nevertheless, the preponderance of the evidence, in our opinion, establishes that plaintiff's disability for the performance of manual labor extended to and beyond the date of trial. Dr. Prevost was of the opinion that surgical repair of the hematoma was necessary and that a period of from four to eight weeks would be required for plaintiff's recovery. As to the back injury, Dr. Macpherson was of the opinion that a properly fitted brace would possibly relieve plaintiff's back condition within 30 to 60 days. Taking into consideration the above suggested procedures, the gist of the evidence is that plaintiff would be disabled for a period of at least one year. If the doctor's suggestions are not carried out the period of disability would likely continue for a more extended period. Claim for loss of wages and earnings should be predicated upon the estimated minimum period of disability in the absence of proof of a more extended period.
The operation will cause plaintiff to suffer additional pain and discomfort. We, therefore, think the award should be increased to compensate therefor, say by the sum of $500. Additionally, plaintiff should recover the necessary and incidental expenses for such an operation and be awarded wages covering the estimated minimum period of his disability of one year. The judgment appealed will thereby be amended accordingly. No allowance, however, can be made in connection with the brace to be worn in the absence of evidence as to its cost. Neither can any consideration be given for the allowance of hospital and medical expenses which might be incurred for surgery to plaintiff's back, for the reason it is not certain that such operation will be required and which, therefore, presents a matter in the realm of speculation and conjecture.
Neither do we find applicable nor persuasive the awards made in the cases cited by plaintiff. Each case has to be judged according to its own facts and the damages awarded accordingly.
For the reasons assigned, it is ordered that the judgment appealed be amended and recast so as to read as follows:
It is, therefore, ordered, adjudged and decreed there be judgment herein in favor of the plaintiff, Chester Carhee, and against the defendants, Charlie Scott, Henry Sheppard and Canal Insurance Company *242 of Greenville, South Carolina, in solido, in the full sum and for the following amounts:

For physical injuries, pain and suffering $2,500.00
For medical expenses incurred 316.00
For medical and hospital expenses in connection
with an operation on a hematoma
of left buttocks 350.00
For loss of wages over a period of 12
months52 weeksat $68.00 per week 3,536.00
 _________
or a total of $6,702.00

with five percent per annum interest thereon from judicial demand until paid, and for all costs, and that, as thus amended, the judgment is affirmed at appellants' cost.
Amended and affirmed.