AYRES, Judge.
This is an action in tort arising out of an automobile collision in the early afternoon of July 27, 19S7, occurring on Spring Creek bridge on U. S. Highway 165 approximately two miles north of Glenmora. The vehicles involved were a Chevrolet owned by plaintiff, Otis W. Elliott, and driven and operated at the time by his wife, Mrs. Mabel Melder Elliott, and a Ford automobile owned and driven by defendant, Donald S. Lynch. The defendants are Lynch and his public liability insurer.
The charges of negligence relied upon by plaintiffs are that defendant Lynch was driving at an excessive rate of speed and in his left or wrong lane of traffic, which course he allegedly continued to pursue notwithstanding the approach of the Elliott vehicle. Counter charges of negligence are laid to Mrs. Elliott allegedly constituting the proximate cause of the accident, or, in the alternative, a contributing cause thereof, in her failure to make proper observation of approaching traffic or to keep and maintain a proper lookout, and in driving, at least partially, on the wrong side of the road, notwithstanding the approach of defendant’s vehicle in its proper lane of travel.
The conclusion reached by the trial court was that plaintiffs failed to discharge their burden of proof and establish by a preponderance of the evidence that the accident was occasioned by the negligence of *53 defendant Lynch. From a judgment rejecting their demands, plaintiffs have appealed.
The highway, a concrete paved thoroughfare, runs generally north and south and, by a bridge 24 feet wide and 287 feet long, crosses Spring Creek. The highway at the scene of the accident is straight except for a slight curve to the right as one approaches the bridge from the south. At the time of the accident there were no unfavorable or unusual atmospheric conditions ; the weather was clear and dry. Mrs. Elliott was proceeding south en route home from her employment at the Central Louisiana State Hospital. Lynch, accompanied by his wife, was returning from a vacation to their residence in Terre Haute, Indiana, and was traveling north.
The issue for determination is entirely factual. The charge that Lynch was proceeding at an excessive rate of speed was not borne out but disproved by the evidence and the charge has been abandoned. The issues in the final analysis have been reduced to the charge by each driver that the other was operating his vehicle in the wrong lane of traffic and, as a corollary thereto, failed to keep and maintain a proper lookout for approaching traffic. There were only three persons witnessing the accident — Mrs. Elliott and Mr. and Mrs. Lynch. Momentarily before the impact and on observing that an accident was inevitable and immediately impending, Mrs. Lynch exclaimed: “The car is coming at us” and then fainted from fright. Mrs. Elliott was rendered unconscious, sustained serious and permanent injuries and Donald ,S. Lynch was likewise injured and stunned.
The accident occurred on but near the north end of the bridge. The impact of the collision was between the extreme left fronts of the vehicles involved. Following the accident the Lynch Ford came to rest 38 feet from the end of the bridge and almost perpendicular to the highway, with the rear of the car resting against the east ..guard rail of the bridge, the left front wheel on the center line of the highway, and the front bumper extending 18 to 21 inches over the center line of the highway. The Chevrolet came to rest headed generally south, the direction in which it was traveling, with the front end angling toward the center line of the highway, and the left front assuming a position opposite the left front of the Ford approximately 20 or 22 inches distant from the center line of the highway. The rear of the Chevrolet had struck the west railing of the bridge 26 feet from the north end. The conclusions as to these facts are reached from the testimony of Troopers Phillip Higdon and Alton Dusang, who investigated the accident, and from the testimony of and the photographs taken by O. U. Payne, Jr., an insurance adjuster who happened upon the scene soon after the occurrence of the accident. Payne was not concerned, at any time, with an official investigation of the accident but he made available to plaintiffs and defendants alike the photographs taken by him.
The testimony of the three eyewitnesses may be briefly summarized. Mrs. Elliott testified she first observed the Lynch car as it approached the south end of the bridge on its right-hand side of the highway; that her speed was approximately 40 miles per hour, which she maintained to the moment of the accident; however, she did not know whether she steered her car to the right or whether she applied her brakes. Nevertheless, she maintains she continued in her lane of travel and that the defendant, Lynch, suddenly darted across the center line of the highway and struck her automobile in her lane of travel.
Defendant Lynch testified that he reduced his speed in negotiating the curve, after which and on attaining a position where he could see beyond the bridge, he observed the approach of the Elliott car some distance north of the bridge in its proper lane of travel, but as he entered the bridge, Mrs. Elliott, not yet having reached the bridge, veered her car *54 toward and into his lane of travel by approximately p/2 to 2 feet, whereupon he decelerated his motor and further reduced his speed, -thinking that she would return to her proper lane while she had time to do so. But, continuing her course as she entered upon the bridge, defendant applied his brakes when about one-third the distance across the bridge, and then applied his brakes very hard when about one-half the distance across. > Momentarily before the impact it appeared to him that Mrs. Elliott made an effort to return to her side of the highway by swerving the front of her car in that direction, too late, however, to avoid the collision. Lynch further testified he reduced his speed further on approaching the bridge, which, at the time of the collision, was only 35 miles per hour or thereabouts. He says the left front of his car was struck by the Elliott Chevrolet and spun around, coming to rest in the position it was found following the impact.
Mrs. Lynch was positive her husband in driving across the bridge was in his proper lane, never at any time departing therefrom. When her husband applied his brakes and blew his horn, Mrs. Lynch testified Mrs. Elliott was coming directly towards them on his side of the bridge.
In addition to references heretofore made to the testimony of Troopers Higdon and Dusang, Higdon testified that by the force of the impact both cars were driven back. He found debris from both vehicles and in both traffic lanes, the major portion of which was on the west side or in the Chevrolet’s traffic lane, beginning near the center of the street and extending in that lane approximately feet. He also testified to skid marks 15 feet in length angling towards and ending at the center line and leading directly to the wheels of the Lynch Ford. Considerable sand and loose dirt covered portions of the pavement in the vicinity of the accident and the trooper found, according to his testimony, impressions or tire marks near the west bridge rail, which he concluded were made by the right rear wheel of the Chevrolet. From these findings the trooper “concluded” the point of impact was 38 feet south of the north end of the bridge and approximately 18 inches to two feet west of the center line of the highway, or in the Chevrolet’s traffic lane. Trooper Dusang assisted Trooper Higdon in the investigation. His testimony closely tracked that of Higdon except he did not find the tire marks near the west rail supposed by Higdon to have been made by the Chevrolet. Du-sang did not make that discovery.
 From our review of the record, we are unable to reach the “conclusions” and make the “determination” as did the troopers as to the point of impact of the collision. Foremost, a serious doubt arises as to the accuracy and verity of the facts-upon which the troopers predicated their, “findings”. The fact that following the. accident debris was found scattered in the highway in both traffic lanes but more in one than the other, or that one of the, cars came to rest on one side of the highway, is not always, without additional proof, a safe or accurate guide in the determination of a point of impact of a-collision between vehicles occurring on a highway. The observation made by Judge McBride of the Orleans Court of Appeal in Galiano v. Ocean Accident & Guarantee Corporation, Ltd., La.App., 55 So.2d 641, 644, to the effect that “It is almost impossible for one to calculate with any degree of precision the behavior of vehicles after a collision”, appears very appropriate. Too, a substantial question arises as to whether the skid or tire marks attributed to the Ford were caused or produced by that vehicle. From the troopers’ testimony, we would be induced to believe that the skid marks were those of the Ford as, according to their testimony, the 15-foot skid marks led directly to the wheel of the Lynch vehicle after it came to rest. The evidence leaves no doubt that the Ford car was struck, spun *55 around and knocked back, the rear end against the east rail of the bridge, with the front end, by virtue of the length of the car, extending beyond the center line of the highway. Whatever skid marks the Ford made would have ended where it was struck and not where it was knocked back and spun around. The fact that more debris may have fallen on one side of the highway than the other is likewise unconvincing as proof that the accident occurred on that side of the highway. Many factors could be involved, such as the considerable surface area of the highway covered by the vehicles themselves, with an unequaled apportionment of debris underneath the vehicles. Nor does the fact that the Ford after coming to rest extending 18 inches to two feet beyond the center line into the west lane of traffic establish, in the instant case, that the accident occurred on that side of the highway. After the Ford was knocked back, spun around and came to rest perpendicularly across the highway with its rear end against the east railing of the bridge, it necessarily extended its full length into the highway and its length was such as to project the front end across the center line. Nor is such fact established by the position taken by the Chevrolet for it would be reasonable to conclude that as its left front struck the left front of the Ford and spun it around, with its rear end acting as a pivot against the east bridge rail and its front bumper protruding beyond the center line, the Chevrolet would necessarily from its location in front of the Ford take a position on the west side of the highway. This evidence is unsatisfactory and unconvincing and fails to establish that the accident occurred in Mrs. Elliott’s lane of traffic.
Commenting further upon the testimony, it appears obvious that Mrs. Elliott had no clear conception as to exactly what happened. She was unable to relate the details of the occurrence. She made no effort to stop or to even reduce her speed. Nor did she know which automobile first entered upon the bridge. From these circumstances, it could only be concluded she was not making proper observation of the traffic situation as she approached and entered upon the bridge.
We find, as did the trial court, that defendant Lynch was able to and did give a rather complete and clear account of the events leading to the occurrence of the accident. His statement that Mrs. Elliott was driving partially in his lane is corroborated by the testimony of the only other eyewitness, Mrs. Lynch. A significant fact is that Lynch applied his brakes and blew his horn. There must have been some reason for this. His explanation is that Mrs. Elliott was partially in his lane of traffic— he blew his horn to give her warning, so that she might return to her proper lane, and applied his brakes in an effort to avoid the collision. No other explanation was given. No suggestion is made by Mrs. Elliott that the Lynch automobile appeared out of control before she says it “dodged” across the center line. Moreover, Lynch testified that at the moment of the collision the left front wheel of the Chevrolet was approximately two feet beyond the center line of the highway and in his traffic lane, whereupon it appeared to him Mrs. Elliott attempted to return to her proper side of the road.
From our review of the record, consisting of numerous exhibits and photographs and including 400 pages of testimony, the conclusion to us is inescapable that plaintiffs have not established by a preponderance of the evidence that defendant Lynch drove on or swerved his car to his left across the center line into the left lane in front of Mrs. Elliott’s approaching car or that the accident occurred in Mrs. Elliott’s lane of travel or that Lynch was otherwise guilty of negligence causing the accident. Nor are we convinced from the evidence that Mrs. Elliott was keeping or maintaining a proper lookout.
In support of their demands, plaintiffs rely upon and cite the case of Rizley v. *56 Cutrer, 232 La. 655, 95 So.2d 139. We are in accord with the pronouncement there that where the primary cause of a collision was the driving of an automobile into that part of a roadway reserved éxclusively for traffic proceeding from the- opposite direction, it is incumbent upon one so doing to show by clear and convincing evidence that his sudden appearance in the other’s traffic lane was due to unexpected and unforeseen circumstances over which he had no control, and that he did not in any particular contribute to the accident. This pronouncement, however, has no application to the facts established to have existed in the instant case and as related hereinabove.
The judgment appealed is, therefore, affirmed at appellants’ cost.
Affirmed.