MILLER, Judge
(dissenting).
The record convinces me that plaintiff carried the burden of proving the two vehicles collided in plaintiff’s traffic lane, and that defendant negligently crossed into plaintiff’s lane. This caused plaintiff to lose control and drive into the east ditch. Plaintiff is therefore entitled to recover. Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 (1957).
The majority has held that the sole proximate cause of this accident was the negligence of plaintiff in negotiating the curve at a high rate of speed, but notes that his speed was within the sixty mile per hour speed limit provided for U. S. Highway 167. Defendant’s witness Mr. Soileau placed his speed and defendant’s speed at 55 miles per hour, the same speed was given by plaintiff as his own at the time the two vehicles passed (or sideswiped). This curve was described in the record as only a bend in the road. The road had been reworked some time before and was hardsurfaced. It had good shoulders. The weather conditions were excellent. There is nothing in this record to suggest that a motorist should reduce his speed from the posted speed limit to negotiate this bend in the road.
My brethren note that plaintiff admitted on cross-examination that he had been drinking on the night in question. His testimony was that he had one beer after he got off his job as an “operator” at the Carbon Black plant at 11:30 that night. The accident occurred at about 1 a. m. and there is no evidence that he had consumed more than one beer that night.
On the other hand, it was established that defendant was under the influence of intoxicating beverages. He spent the balance of that night in jail and was bonded out later that day. He later forfeited the bond on the D.W.I. charge.
The trial court stated in written reasons (Tr. 83, 84) that “the Court was impressed with the testimony of a disinterested witness, Robley Soileau, who was following the Jackson (defendant) vehicle approximately a block away.
“This witness testified that no collision occurred between the Jackson vehicle and the Jack vehicle and that, as a matter of fact, it seemed to him at the time that the Jack vehicle was out of control before it met up with the Jackson vehicle because the Jackson vehicle pulled off the road onto the shoulder when he missed the Jack vehicle. Mr. Soileau stated that he did likewise. Mr. Soileau also stated that he saw in his rearview mirror that the Jack vehicle had turned over from the lights.
“The Court has studied the demeanor of the witnesses and concludes that the plaintiff has failed to carry the burden of proof necessary to recover. This is reinforced since no evidence whatsoever was shown that would indicate a collision did occur. Certainly if the defendant’s truck had been dented as intimated a picture could have been made of this. The defendant testified his truck was never wrecked before or after this alleged accident.”
As stated in our majority opinion, the trial judge “believed Mr. Soileau’s version of the- accident. We cannot say that he committed error in arriving at his decision.” I agree that when the trial court expresses an opinion on credibility we are bound to accept this statement of credibility. But what was Mr. Soileau’s testimony?
First let us note that Soileau admitted that he had spent the evening in Clubs and admitted that he had consumed “three” beers (Tr. 192) subsequent to his last meal (eaten before 6 p. m.) that day. Mr. Soil-eau’s passenger, Mr. Kenneth Fontenot, was not called to testify. This may have been because Fontenot was quite intoxicated at the time of the accident (Tr. 203), or perhaps because his address at the time of trial was unknown. Mr. Soileau was *180 looking for a restaurant at the time he witnessed the accident.
Soileau stated that he was following defendant at a speed of 55 mph (Tr. 188) at a distance estimated at one block (Tr. 202) and that he first noticed plaintiff’s vehicle approching when it was 250 to 300 feet from Soileau. Tr. 197. This must be interpreted as stating that he didn’t notice plaintiff’s vehicle until plaintiff and defendant passed one another. If before, it could not have been much before. Soileau described the manner in which plaintiff was approaching as “ * * * it looked like it was pretty much in control but it was coming fast.” Tr. 183.
At Tr. 197 Soileau was testifying about what happened when he and defendant first drove back to check on plaintiff and his wrecked 1964 Corvair.
“Q. Did you talk with him (defendant) face to face?
“A. Yeah, I talked to him. He said he thought Jack’s (plaintiff’s) car had hit him, sideswiped it.
“Q. That’s what he told you ?
“A. That’s what he thought, that’s what he said he thought.”
At Tr. 180, Soileau testified:
“Q. Did you all talk or say anything?
“A. Well he asked me what happened, I told him it looked like his car had wrecked.”
At Tr. 202, Soileau testified:
“Q. Did you see an accident? Did you see them hit?
“A. No, I didn’t see, well in fact, from what I seen it didn’t seem like anybody hit him.”
At Tr. 204, Soileau was testifying as to what he told the investigating officer.
“Q. Did you tell him that you hadn’t seen a collision?
“A. No, I — yeah, I told him I didn’t see a collision, from what I seen, it didn’t look like they had hit.
“Q. I see.
“A. They could have hit but I didn’t see, you know.”
Soileau testified at Tr. 200 that he, the defendant, and the investigating officer (all three) looked at the scratches and the dent on defendant’s left front fender. At that time, there was no suggestion that these damages were not related to the accident. Soileau admitted at Tr. 198 that he couldn’t tell whether or not defendant had been drinking because of the three beers which he (Soileau) had consumed. Soileau was absolutely certain that plaintiff’s vehicle never crossed the centerline. Tr. 175, 184, 185, 197.
The investigating officer testified that he talked to Soileau and to defendant while making his investigation. He gained the impression at the investigation that the impact occurred in plaintiff’s lane of traffic. Tr. 108, 110. He found slight damage on plaintiff’s left front fender. Tr. 113. He found defendant to be under the influence of intoxicating beverages. Tr. 106.
Defendant was living in Alexandria and working in Ville Platte at the time of the accident. On the morning before the accident, he got up to go to work sometime between 4:00 and 5:00 a. m. He completed the day’s work at about 5:30 p. m. and drove back to his home. He ate a good supper and drank one beer with supper. Later in the evening he drank another beer. While getting ready to go to bed, he discovered that he had some keys that the night watchman needed, so he decided to drive back to Ville Platte to return the keys. Since he was sleepy, he took a can of beer to drink on the road “to help me stay awake.” Tr. 215, 254. He drank this can of beer within the first few miles. Tr. 49. The accident occurred at 1 a. m., some 30 to 45 miles later. He had been without sleep at this time for at *181 least 20 hours, and admitted that he was “drowsy” at the time of the accident. Tr. 259.
Defendant contradicted himself so many times that the writer, at least, must conclude that his testimony is questionable. In this connection it is noted that both the trial court and my brethren rely on the testimony of Mr. Soileau. The only testimony in this record to indicate that plaintiff crossed the centerline of the highway was the testimony of defendant.
Defendant testified that he first noticed plaintiff’s vehicle when it was about 200 feet away from him. It was not weaving. Tr. 231. But when plaintiff was about 150 to 200 feet away, it looked like plaintiff went onto his right shoulder, then started drifting into the center of the road. Tr. 61 et seq; tr. 230 et seq. Defendant stated that he reacted by pulling to the right, and that he thought that plaintiff continued across the road and went into the ditch on the west (plaintiff’s left) side of the road. That defendant was confused as to his position in the road and as to plaintiff’s movement is absolutely certain, for Soileau consistently and adamantly testified that plaintiff never crossed the centerline. Furthermore it was established that plaintiff’s vehicle left the road on the east side rather than on the west.
This testimony is entirely consistent (except as to plaintiff’s crossing into the middle of the road) with the version given by plaintiff. Plaintiff saw defendant’s vehicle come into plaintiff’s lane of traffic. He slowed while taking the right shoulder (also blinked his lights and sounded his horn), but defendant continued on into plaintiff’s lane and struck a light blow on the front of plaintiff’s ’64 Corvair, causing him to lose control and continue into the ditch on his right. Tr. 143.
I find error in the trial court’s finding that Soileau’s testimony requires a holding that there was no impact between the vehicles. Soileau did not testify (as the trial court stated) that the Jack vehicle was out of control before it met the Jackson vehicle. Soileau specifically testified that the Jackson vehicle appeared to be under control. The testimony that Soileau pulled over to the right must have referred to his action after the accident, while preparing to turn around. For Soileau was adamant that plaintiff’s vehicle never crossed the center-line. Furthermore, Soileau first saw plaintiff’s vehicle when it was only 250 to 300 feet away from Soileau.
As noted earlier, there was much evidence in the record showing that Soileau and the investigating officer both found damage on defendant’s left front fender.
To the statement that “defendant testified his truck was never wrecked before or after this alleged accident.” Tr. 84, the writer notes that defendant repudiated this testimony and testified that he totally wrecked his truck three months after this accident. Tr. 54.
Since plaintiff was unconscious for several days after this accident and was hospitalized thereafter; since neither party had liability insurance; and further, since the truck was totally destroyed approximately three months after this accident, it does not appear significant to me that there were no photographs taken to show damage or lack of damage to the left front fender of defendant’s truck.
The writer finds manifest error in the trial court’s decision and respectfully dissents.