EDWARDS, Judge.
These consolidated cases arose out of a head-on collision. The accident occurred about six o’clock p.m. on April 21, 1972. The weather conditions were clear and dry, and the location was a relatively straight stretch of U.S. Highway 51 in Tangipahoa Parish. The vehicles involved were a 1963 Chevrolet driven by Spencer Foreman, proceeding in a northerly direction, and a 1971 Chevrolet driven by Karl Kent, proceeding in a southerly direction. The collision took place in the northbound lane, Foreman’s proper lane of travel. As a result of the collision, both vehicles were damaged heavily. Both drivers were injured, Foreman more seriously. Doris Shields, guest passenger in the Foreman vehicle, died as a result of injuries sustained in the accident. Kent was travel-ling alone; in addition to Doris Shields and Foreman, Jerome Shields and Huey P. Galmon were riding in the Foreman vehicle.
Spencer Foreman filed suit against Karl Kent, his father Charles Kent, and their insurer, American Indemnity Company of Galveston, Texas. The nine surviving children of Doris Shields brought suit against the same defendants for wrongful death, for their mother’s surviving action for pain and suffering, and for funeral expenses. The trial court rendered judgment dismissing all plaintiffs’ claims. This appeal followed.
The primary issue presented by this appeal is whether the trial judge erred in finding defendant Karl Kent free of negligence.[1]
Appellants correctly contend that the burden is on the defendant to exculpate himself from fault in this type of situation:
“A motorist who is involved in a collision in the wrong lane must absolve himself from negligence by a clear preponderance of the evidence; that is, inasmuch as he was in the wrong lane of *273 traffic at the time of the accident, he is presumed to have been negligent and bears the burden of establishing that he was without fault or that there were circumstances which justified his conduct.” Springer v. Government Employees Insurance Company, Inc., 311 So.2d 36, 38 (La.App. 4th Cir. 1975). See also Rizley v. Cutrer, 232 La. 655, 95 So.2d 139 (1957) and Wishom v. Ford Motor Company, 256 So.2d 298 (La.App. 1st Cir. 1971).
We now turn to a review of the evidence, which discloses conflicting versions of the occurrence.
Spencer Foreman testified that he was proceeding north at about 55 to 60 m. p. h. intending to turn left onto a road next to the Hines Lumber Company. He first saw the Kent vehicle as it topped a rise, or slight hump in the highway, next to the above-mentioned road. At that point Foreman estimated he was some 250-300 yards from the Kent vehicle. Foreman described the progress of the Kent vehicle from this point as “all over the road, kinda zig-zag.” He stated that immediately before impact the Kent vehicle was headed “over in my lane kinda.” At all times after he first saw the Kent vehicle Foreman stayed in his own lane of travel. Further, he “didn’t take his eyes off him” and continued on, watching, until the collision. When Doris Shields yelled “look out” just before impact, Foreman said he didn’t have time to do anything to avert the collision. He said he didn’t remember whether he had hit his brakes but was quite sure he didn’t turn the steering wheel before impact.
Jerome Shields, one of the plaintiffs and a rear seat passenger in the Foreman vehicle, gave the only other testimony corroborative of Foreman’s version of the accident. He stated that he observed the Kent vehicle coming down the center line of the highway at them, fishtailing. According to him, Foreman never swerved the car nor turned his head during this time. However, although Shields admitted that the .first time he saw the Kent vehicle was when Doris Shields screamed, he still maintained that the cars were far enough apart at that point, some 150 feet, for him to watch the Kent vehicle as it fishtailed towards them.
The day after the accident Jerome was interviewed by Harry Zylicz, an insurance adjuster for defendant insurer. Harry Zylicz testified that he took a statement from Shields which read as follows:
“Well, the statement speaks for itself, ‘Jerome Shields, colored male, fifteen years, Box 144, Fluker, Louisiana. On 4-21-72 at about 6:00 P.M., it was still daylight, roadway was dry. I was in the rear left side of a ’63 Chevrolet driven by my father, Spencer Foreman, age 72. My mother, Dorothy Shields, was in the front seat. Huey Galmon was in the back seat with me. We were travelling north on U.S. 51 about forty miles per hour, headed toward Fluker. The Kent car was going in the opposite direction, over sixty miles per hour. The collision occurred just about in front of Conway’s Lumber Yard. My father for some reason left the right side of the highway and allowed his car to cross the centerline and get onto the wrong side of the road. He wasn’t on the wrong side of the road long for my mother screamed and as she did he immediately abruptly swerved hard to his right and did get back onto his side of the road and just the moment he got onto his side of the road the accident occurred. When my mother screamed, I looked up and my dad swung hard right, I saw Kent car then for the first time. It then was on it’s proper side of the road, not far from us, and as my dad swerved right to get to his side of the road it seemed that Kent swerved left and the cars collided on my dad’s side of the road. I hurt my right leg, my right shoulder. I went to Charity Hospital. Am O.K. now. I have been read this statement and it is true and correct.’ ”
*274 • Jerome explained that the difference in his trial version of the accident and that given to Zylicz was that the latter version was Huey P. Galmon’s, the other passenger in the Foreman vehicle. Jerome gave no reason why he related Galmon’s version, rather than his own recollection of the accident, to the adjuster. Further, Jerome admitted that he had not seen Galmon following the accident until over a week later, but he maintained that he had nevertheless heard Galmon’s version that next day from a lady to whom Galmon had spoken.
Three other witnesses — Johnny Foreman, Rebecca Shields, and Calvin Shields — testified that they had arrived at the scene of the accident shortly after the collision occurred and had seen a liquor bottle on the front seat of the Kent vehicle. Rebecca Shields testified further that a police officer poured the whiskey out and threw the bottle across the nearby railroad tracks.
Karl Kent gave the following version of the accident. He first saw the Foreman vehicle as he topped the rise near the Hines Lumber Company. He was traveling about 50-55 m.p.h. When he saw the Foreman vehicle, it was about 250-300 yards away. At that time Foreman began drifting over into Kent’s southbound lane. Kent stated that he began veering slightly to his left to give Foreman room. Foreman continued on in the southbound lane until he was almost on Kent, whereupon Kent braked and cut his vehicle hard to his left. Immediately thereafter Foreman cut to his right and they collided.
Huey Adams, the State Police Officer who investigated the accident, testified that he questioned the passengers (Galmon and Jerome Shields) of the Foreman vehicle.
Q. I see. And what did they tell you and take one at a time if their versions were different or tell me what they told you about the accident, please ?
A. Well, I couldn’t recall exactly which one said what at this particular time but I do recall them telling me what happened and they told me that the driver of the 1963 Chevrolet, which was Spencer Foreman, had turned his head back to talk to one of them in the back, to Galmon, and the next . . . and when he did the vehicle went over into the southbound traffic lane and that the woman screamed when the . . . that’s Doris Shields screamed and the driver cut the . . . whipped the vehicle back over into the northbound traffic lane and that’s where the accident . . . that’s when the collision happened.
Q. Officer, did you . . . .when you said they told you, did Jerome Shields tell you a version of the accident to the effect you just testified or words to that effect P
A. I got this from both of them.
He also testified that the Kent vehicle left a set of skid marks about 3CY long starting in the southbound lane and crossing over into the east edge of the northbound lane where the collision occurred. The Foreman vehicle left no skid marks. Finally, he testified that there was no indication when he questioned Karl Kent that evening that he had been drinking, nor did he remove a bottle from Kent’s car.
Huey Galmon testified that he was watching a boy on a bicycle when he heard Doris Shields say “watch out, Buddy.” Galmon looked up and saw that Foreman was in the southbound lane. Foreman then pulled his wheel back to the right, and the collision occurred. Galmon’s testimony at trial was substantially unchanged from the statement he gave the insurance adjusters.
The photographs introduced at trial show heavy damage to the front of Foreman’s vehicle and the right front and right front side of Kent’s vehicle. Appellants argue that the depicted damage refutes the appellees’ version of the accident. We note on this point the real difficulties in *275 volved, even with the aid of expert testimony (not present herein), in attempting to reconstruct positions and headings of vehicles prior to a collision from analyses of photographically depicted resultant damage. See Holder v. Travelers Ins. Co., 159 So.2d 292 (La.App. 2d Cir. 1964). This Court cannot conclude that the photographs necessarily either refute or prove Kent’s version.
The better evidence is the testimony of the participants. After a careful review of the record, we find that there is ample justification for the trial court to have concluded that Kent’s version more probably reflected the true occurrence than did Foreman’s version. The Kent version was corroborated by Galmon and by the physical evidence of skid marks left by that vehicle. Foreman’s version is corroborated only by Jerome Shields testimony, which testimony was strained and incredible at times. Further, Foreman’s own testimony that he observed the erratic approach of the Kent vehicle for some 300 yards without taking any defensive action at all raises more questions than it answers.
But most importantly, and especially where, as here, the decision rests primarily on the determination of credibility, the trial judge is peculiarly better able than we to separate the facts from the fluff. It is a well recognized principle of appellate review that we apply. See Canter v. Koehring Co., 283 So.2d 716 (La.1973). We cannot say that the trial judge erred in accepting Kent’s version and holding that defendants had carried their burden of exonerating themselves from the initial adverse presumption by showing circumstances justifying Kent’s being in the wrong lane of travel at the time of the collision.
The decision of the trial court is affirmed at appellants’ costs.
AFFIRMED.

. Although the trial judge did not render written reasons, we assume that the dismissals of plaintiffs’ suits were based on such a finding, since, although any contributory negligence of Foreman would have barred his recovery, such negligence would not have barred recovery by the guest passengers or survivors against Kent.