195 So.2d 150 (1967)
James C. DEAN
v.
Mae H. ORGERON.
No. 6910.
Court of Appeal of Louisiana, First Circuit.
February 6, 1967.
*151 Stanley L. Perry, of Perry & Perry, Galliano, for appellant.
M. N. Grossel-Rossi, New Orleans, for appellee.
Before LANDRY, ELLIS and BAILES, JJ.
LANDRY, Judge.
This is an action for personal injuries resulting from a head-on collision which plaintiff contends resulted solely from the negligence of Darryl Orgeron, the minor son of defendant, Mae H. Orgeron, the assured of defendant, The Home Indemnity Company of New York. Plaintiff concedes having driven into Orgeron's lane of travel immediately preceding the collision but denies such action on his part was negligence *152 inasmuch as it occurred when he was suddenly incapacitated due to unforeseeable and unexpected diabetic shock. The trial court rejected plaintiff's demands upon finding the driver of the Orgeron vehicle was confronted with a sudden emergency not of his own making and was free of negligence in that he reacted thereto as a reasonably prudent driver, notwithstanding his attempted evasive action did not avert the collision. From said decision plaintiff has appealed. We find that the trial court correctly decided the issue of liability and affirm the judgment rendered below.
The accident in question occurred in Galliano, Louisiana, on Highway 1 (a paved two-lane highway eighteen feet in width) at approximately 8:00 A.M., February 28, 1964. The weather was clear and the roadway dry. Plaintiff was proceeding northerly along said highway in his 1959 Ford Sedan at a speed of 35-40 miles per hour while at the same time Orgeron was traveling southerly in his mother's automobile. Approximately 200 yards north of the point of collision there is a slight curve which Orgeron negotiated before sighting the oncoming vehicle of appellant. It is undisputed that appellant's automobile was driven partially into the left lane of travel but resumed its proper side prior to the actual impact which occurred approximately three feet east of the center line of the highway at which point the front of the Orgeron car came into contact with the left front of plaintiff's Ford. It is also undisputed that plaintiff's car left skid marks which, by actual measurement, commenced one and one-half feet west of the center line of the highway. These skid marks ran one-half their length of 32 feet in the west or southbound lane and the remaining half in the northbound lane to the point of impact. Defendant's vehicle laid down skid marks 78 feet in length commencing in the southbound lane. Approximately 10 feet from the point of collision, the skid marks made by defendant's vehicle veered sharply into the northbound lane and continued to the spot of impact.
With the scene thus set, appellant maintains the accident resulted from young Orgeron's negligence in driving at an excessive speed; failing to maintain a proper lookout; veering into the left or wrong lane of travel, and failing to keep his automobile under proper control. Alternatively, appellant pleads last clear chance.
Defendant contends the accident resulted solely from the fault of plaintiff in failing to maintain a proper lookout; neglecting to keep his car under proper control; driving at an excessive rate of speed; operating his vehicle in the wrong lane of travel, and operating his vehicle notwithstanding his awareness of a physical handicap which rendered his driving an automobile inherently dangerous. Defendant also pleads appellant's alleged negligence in the alternative should defendant be held guilty of negligence proximately causing the accident. In essence, however, appellee's defense is founded on the doctrine of sudden emergency.
Appellant, who is 62 years of age, admits he has been a diabetic since 1958, during which entire time he has taken no medication but rather has controlled his said condition by regulating his diet. Prior to the accident he experienced no discomfort, vertigo or "blackout spells" whatsoever. On the morning of the accident, he was returning to his home in Galliano after working the "graveyard shift" at a local Texaco plant in the vicinity. He left the plant at the end of his shift at 7:45 A.M., and had proceeded to a point approximately one block from his residence when the collision occurred. In essence plaintiff testified he was proceeding at a speed of 35-40 miles per hour and first became aware of the oncoming Orgeron car when he heard a horn blowing. He immediately applied his brakes, turned as far as he could to the right without going into the bayou on the east side of the road, and came to a stop. Other than the foregoing, plaintiff's testimony contributes very little toward explaining the circumstances of the accident.
*153 Darryl Orgeron in substance testified he was proceeding southerly along the highway at a speed of about 45 miles per hour on his proper side of the highway. Upon rounding the curve in the highway, he noted the oncoming vehicle approximately 100 yards distant traveling partially in the left lane. He estimated that when he first saw Dean's approaching car it was approximately one-half in the left lane and gave the impression it was pulling off the roadway on the left side to enter a nearby lane with which Orgeron was familiar. Upon seeing the Dean automobile, Orgeron applied his brakes lightly to slow the speed of his own vehicle so that Dean might get off the road without incident. Instead, Dean drove back to his right as though to regain the northbound lane whereupon Orgeron applied his brakes full force and braced himself for the inevitable impact. The foregoing is the full extent of Orgeron's recollection concerning the accident.
Plaintiff's contention that Orgeron was traveling at an excessive rate of speed is not supported by a preponderance of evidence. The sole testimony on this issue is that of a motorist following the Dean vehicle at an estimated distance of 200 yards. The witness, Lee Owens, in effect, testified he saw the oncoming Orgeron vehicle at a distance and did not pay too much attention to it. He observed plaintiff's automobile go into the left lane and saw the collision. He stated he believed the Orgeron vehicle was proceeding at a speed of about 80 miles per hour. As did our colleague below, we place little credence in the testimony of this witness based upon such casual observation. Moreover, while the damage to the vehicles was admittedly extensive and suggests that Orgeron was traveling somewhat in excess of 45 miles per hour, nothing save Owens' testimony supports the conclusion the Orgeron automobile was traveling at 80 miles per hour. We find, as hereinafter indicated, the proximate cause of the accident was plaintiff's traveling in the left or wrong lane creating an emergency.
It is settled law that upon roadways having a width sufficient to accommodate only one line of traffic in each direction, motorists shall pass each other on the right. Under such circumstances, each driver must accord oncoming motorists one-half the main traveled portion of the highway as nearly as possible. LSA-R.S. 32:72. On innumerable occasions it has been held that a driver who violates the foregoing rule of the road by traveling in the left or wrong lane of travel is prima facie presumed negligent and bears the burden of refuting the resultant inference of fault. It suffices, we think to cite in support of the foregoing principle only Rizley v. Cutrer, 232 La. 655, 95 So.2d 139; Noland v. Liberty Mutual Insurance Co., 232 La. 569, 94 So.2d 671.
It is a well established principle that a motorist confronted with a sudden emergency is held solely to the duty of reacting as a reasonably prudent driver. Such a driver is not held to any degree of care other than what would be expected of an ordinarily sensible motorist. Brown v. Head, La.App., 158 So.2d 442; Carhee v. Scott, La.App., 104 So.2d 236. A motorist faced with an emergency not of his own creation is required only to exercise that degree of care that an ordinarily precautious driver would be expected to make under similar circumstances. Pittman v. Allstate Insurance Company, La.App., 177 So.2d 427. We find that upon being confronted with the oncoming Dean vehicle partially in the left lane approximately 100 yards distant, Orgeron's action in first braking lightly to permit time for what he believed to be an attempt to turn left into a lane was reasonable and proper under the circumstances. If plaintiff were in fact attempting to leave the roadway to the left, as Orgeron surmised, it was reasonable and logical for Orgeron to permit such maneuver and thus avoid colliding with a motorist making a left turn across his path. It appears that at this juncture there was no emergency insofar as Orgeron was concerned. When, *154 however, Dean again turned toward the right as though to regain the roadway, Orgeron was confronted with an emergency as he could only speculate with regard to what Dean might do. Since Orgeron left 78 feet of skid marks prior to the impact, allowing for reaction time, we believe it fair to conclude Dean turned toward the right when Orgeron's vehicle was approximately 150 feet distant. Under such circumstances Dean's vehicle was so near that its turning to the right justified a reasonably prudent driver believing an emergency existed and that a collision would result unless some evasive action were taken. A driver faced with a sudden emergency not of his own making is not required to make such a choice of evasive maneuvers as will prevent an accident. Such a driver must, to avoid liability, only react as would a normally prudent driver under like circumstances. Pittman v. Allstate Insurance Co., 177 So.2d 427. In the instant case we believe Orgeron's action in forcibly applying his brakes was the reaction of a reasonably prudent driver.
Nor do we find any merit in the contention Orgeron is liable under the doctrine of last clear chance. It is well settled that for this doctrine to apply three essential elements must be found to exist or be present, namely: (1) the party invoking the principle was in a position of peril of which he was unaware or from which he was unable to extricate himself; (2) the person against whom the doctrine is plead actually discovered the peril or was in such position that he should, by the exercise of reasonable care, have discovered the other party's danger; and (3) at such time the person against whom the doctrine is invoked could have avoided the accident by the exercise of reasonable care. Coleman v. Mason, La.App., 174 So.2d 655; Moses v. Commercial Standard Insurance Company, La.App., 174 So.2d 682.
Germane to the question of last clear chance is the principle that a motorist traveling on his proper side of the highway has a right to assume that an oncoming motorist who pulls into his lane of travel will yield the right of way and return to his proper lane in sufficient time to avoid a collision. LSA-R.S. 32:232; Breaux v. Flithers, et al., La.App., 144 So.2d 574. If, however, he has reason to believe the motorist will cross the highway, he should react accordingly.
Applying the foregoing principles to the case at bar, we find Orgeron did not in fact have the last clear chance to avoid the accident. When he first saw the oncoming vehicle cross the center line, he had cause to believe Dean was turning off the road to enter a lane on the west side of the highway and also that Dean had sufficient time to complete such maneuver. Acting on this assumption (which appears reasonable under the circumstances) Orgeron reduced the speed of his vehicle by lightly applying his brakes to afford Dean an opportunity to clear the roadway. However, when Dean suddenly swerved back to his right, the distance between the vehicles was then such that Orgeron was indeed faced with an emergency created by plaintiff. Reacting to the circumstances, Orgeron applied his brakes full force in an effort to stop and thus avoid a collision. While hindsight might establish that Orgeron could possibly have avoided the collision by some other maneuver such as turning either to the right or left, in the emergency which presented itself he was not called upon to exercise the cool and calm judgment of which one is capable when no exigency is present. His action in applying his brakes full force was that of an ordinarily prudent driver under similar circumstances. Having so reacted, the doctrine of last clear chance may not successfully be invoked against him. Pittman v. Allstate Insurance Co., 177 So.2d 427.
*155 We now consider appellant's argument that the trial court erroneously held appellant guilty of negligence in crossing over the center line of the highway notwithstanding appellant's faculities were impaired and he was deprived of the power of concentration by a sudden, unexpected and unforeseen onset of diabetic shock or coma. In this regard counsel for appellant contends the trial court erred in refusing to admit certain medical and lay testimony proffered on this point.
We find no case in point in our own jurisdiction excepting Livaudais v. Black, 13 La.App. 345, 127 So. 129, in which there appears certain dictum on the subject matter under discussion. The general rule, however, appears well established to the effect that unforeseeable momentary loss of consciousness due to illness is a defense to an action against a driver predicated on negligence or gross negligence. See A.L.R.2d, Verbo AutomobilesIllness or Drowsiness, page 22, § 3. Summary and Comment (2); See also 28 A.L.R.2d Verbo AutomobilesIllness or Drowsiness, Page 35, III, a, § 15, and authorities therein cited.
We believe the rule in question is reasonable in that it is predicated on the logical and humane principle that the actions of an unconscious or incapacitated driver are not voluntary on his part and thus relieve him of the stigma of negligence and the legal liability usually resultant therefrom. Our research discloses the rule has many facets and ramifications which it is not necessary to discuss herein. We embrace the rule and endorse its application in a proper factual situation.
The trial court, however, considered evidence of plaintiff's alleged diabetic condition irrelevant and immaterial and excluded same upon defendant's objection. In essence defendant objected to such evidence on the ground plaintiff's petition did not mention incapacity due to illness and therefore plaintiff could not adduce evidence of this character to rebut defendant's allegations of negligence and contributory negligence alternatively plead in the answer to plaintiff's petition. In so ruling, we believe our colleague below fell into error.
LSA-C.C.P. Article 852 provides as follows:
"The pleadings allowed in civil actions, whether in a principal or incidental action, shall be in writing and shall consist of petitions, exceptions, written motions, and answers. No replicatory pleadings shall be used and all new matter alleged in exceptions, contradictory motions, and answers, whether in a principal or incidental action, shall be considered denied or avoided."
From the foregoing it is clear that plaintiff is not required to respond to defendant's answer. Without response or rejoinder defendant's allegations, contentions and positions are deemed denied.
Our jurisprudence is settled to the effect that plaintiff is not required to file replication to an answer or reconventional demand. Neither is plaintiff required to anticipate a possible defense defendant might raise and negate same in plaintiff's petition. Under our procedural rules every defense available to any position taken by defendant is open to plaintiff and it is the duty of the trial court to consider each such defense without the necessity of plaintiff pleading same. All allegations of defendant's answer are open to every objection of law and fact as fully as though specially pleaded by plaintiff. Liberal Finance Gentilly, Inc. v. Brister, La. App., 152 So.2d 331.
A plaintiff may produce evidence to counteract, offset, refute or defeat any defense or position taken by defendant and is under no obligation to reply to any matter or contention made by defendant in his answer. McNabb v. Food Town, Inc., La.App., 143 So.2d 144.
*156 However, the error of the trial court in declining to admit the evidence in question has not resulted in prejudicial error and is therefore not ground for reversal of the judgment rendered below.
Manifestly the rule invoked by appellant can only serve to relieve a motorist of the effect of action which would otherwise be negligence in the eyes of the law and subject him to liability to parties injured thereby. Conceding a motorist may thusly find relief from the usual legal consequences attending his actions, the rule nevertheless does not impose any greater burden upon the defendant from whom such a motorist seeks damages for injuries resulting from the accident.
Assuming, therefore, plaintiff could have established circumstances entitling him to the benefit of the rule in question, it would avail plaintiff nothing. Granting plaintiff could have proved he was in a state of diabetic shock at the time of the accident, it would relieve him of the obligation of responding in damages to anyone injured therein. It would not, however, impose a greater burden on Orgeron than Orgeron owed the public at large. The criteria of Orgeron's liability remains the same, namely, whether he was or was not guilty of negligence proximately causing the accident and whether he did or did not have the last clear chance to avoid the collision.
In this latter regard it is patent that had plaintiff been in diabetic shock at the time, the relative positions of the vehicles would not have been altered thereby. Neither would the emergency which faced Orgeron have been diminished one iota as a result of plaintiff's alleged condition. The nature of the imminent danger which confronted Orgeron would have been exactly the same. The duty incumbent upon Orgeron, regardless of plaintiff's physical condition, was to avoid striking plaintiff's vehicle if he could do so by the exercise of reasonable care under the circumstances and if he did in fact have the last clear chance to do so.
Having concluded Orgeron was free of negligence proximately causing the accident and that he did not have the last clear chance to avoid the collision, plaintiff's negligence or freedom therefrom is a matter of no concern. It is settled beyond all question that excepting certain instances inapplicable to the present case, as a general rule for a defendant to be cast in judgment, plaintiff must establish defendant's guilt of negligence proximately causing the accident sued upon. See Geyen v. Toussan, La.App., 148 So.2d 115, and cases cited therein.
The judgment of the trial court is affirmed at appellant's cost.
Affirmed.