308 So.2d 428 (1975)
G. J. DEVILLE LUMBER COMPANY, INC., Plaintiff-Appellee,
v.
Ronald Edwin CHATELAIN, Defendant-Appellant.
No. 4805.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1975.
Rehearing Denied March 12, 1975.
Writ Refused June 6, 1975.
*429 Dodd, Hirsch, Barker, Avant & Wall by Kenneth L. Riche, Baton Rouge, for defendant-appellant.
Jack C. Frugé, Sr., Ville Platte, for plaintiff-appellee.
Before HOOD, CULPEPPER and MILLER, JJ.
HOOD, Judge.
G. J. Deville Lumber Company, Inc., instituted this suit to recover the balance of $2,429.91 due under a contract, pursuant to which it constructed a home for defendant, Ronald Edwin Chatelain. Defendant answered alleging generally that there were defects in the construction, that the cost of correcting them should be set-off against the amount claimed, and that plaintiff's suit should be dismissed. Defendant also filed a reconventional demand alleging breach of contract, setting out particularly several omissions or defects in construction, and demanding damages from Deville in the amount of $16,759.00, including $3,000.00 for mental anguish. The trial judge rendered judgment in favor of Deville and against Chatelain for $1,360.91. Chatelain appealed.
The issues presented, stated generally, are whether Chatelain is entitled to credits or set-offs against the amount he owes under the contract, in addition to the set-offs allowed by the trial court, and whether he *430 is entitled to recover damages for breach of contract.
In August, 1971, the parties entered into a contract under the terms of which Deville agreed to construct a home for Chatelain for a price or consideration of about $25,000.00. The construction of the home was completed in January, 1972, at least to the extent that Chatelain was able to move into it, and defendant has lived in the home since that time. Chatelain did not pay the consideration called for in the contract when demand was made upon him because he contended that parts of the house had not been constructed in accordance with the specifications, and that the workmanship was defective in several respects.
Before construction was begun, Chatelain obtained a commitment from Avoyelles Savings and Loan Association for a loan of $21,500.00, which amount was to be used to pay the major part of the construction costs of this house. Some time in January or February, 1972, representatives of that association inspected the house and approved it for completion of the loan. Before the association would disburse the proceeds of the loan, however, it required a "lien waiver" or a "no-lien" certificate from the contractor.
On March 13, 1972, Deville received a letter from the Savings and Loan Association informing it that the association was ready to remit to it the proceeds of the loan, and requesting that Deville advise the association whether that amount "will settle all claims incurred in the construction of said home."
On March 14, immediately after receipt of the above letter, Lionel Deville, president of plaintiff corporation, met with defendant Chatelain at the latter's newly constructed home to discuss their differences. At that meeting Deville and Chatelain agreed that the total contract price due Deville for constructing the home was $23,929.91, and that after the construction was completed and the proceeds of the loan were paid to Deville there would remain a balance of $2,429.91 due by Chatelain on that contract. Both parties also agreed at that time that Chatelain would pay to Deville immediately the sum of $1,429.91, that Deville would perform some specified corrective work on the house, and that Chatelain would pay the remaining balance of $1,000.00 due under the contract when the corrective work agreed upon was performed by Deville.
Pursuant to that agreement, Chatelain issued and delivered to Deville on March 14, 1972, his check for $1,429.91. Deville, in consideration of that payment and pursuant to the agreement, executed the formal "lien waiver" or "no-lien" certificate, which the Savings and Loan Association required, and he also wrote a letter to that association advising that "This will settle all but $1,000.00 which owner has agreed to remit." The lien waiver was delivered to the Savings and Loan Association, and in due course the loan proceeds in the amount of $21,500.00 were paid to Deville and credited to Chatelain's account. Deville also, pursuant to the agreement, promptly sent two carpenters and a painter to the Chatelain home to make the corrections or repairs which he had agreed to make, and those workmen worked five full days in Chatelain's home making those repairs. Deville feels that it corrected all of the defects in the house which it and Chatelain agreed should be made.
After Deville had signed the lien waiver and had incurred some expense in making the corrections which the parties had agreed upon, Chatelain stopped payment on the check for $1,429.91 which he had issued to Deville, and he has refused to pay plaintiff the amount of that check or any part of the $1,000.00 which had been withheld from the agreed contract price. Deville instituted this suit several months later, on September 25, 1972, to recover the $2,429.91 balance due on the contract.
Chatelain, in his amended answer, alleged generally that plaintiff had constructed this building with serious defects *431 and omittances, that the cost of correcting them would exceed the amount sued for by Deville, and that defendant is entitled to a set-off from the amount claimed. In that answer, Chatelain did not particularize any of the defects which he felt existed. In his reconventional demand, however, Chatelain alleged with particularity a number of defects and omittances.
At the trial evidence was offered by Chatelain to show the defects in construction which were alleged, and also to show defects other than those which were particularized in the reconventional demand. Plaintiff objected to any evidence tending to show defects or omittances which had not been alleged in the reconventional demand, basing that objection on the ground that such evidence tended to enlarge the pleadings. The trial judge admitted the evidence subject to the objection, but he eventually ruled that evidence as to defects not specified in the reconventional demand was not admissible. Considering only the evidence which he felt was admissible, the trial judge held that a balance of $2,429.91 was owed to Deville under the contract, but that Chatelain was entitled to credits or set-offs amounting to $1,069.00, and he accordingly rendered judgment in favor of plaintiff Deville for the remaining balance of $1,360.91.
We arrive at substantially the same result as did the trial judge, but we prefer to base our decision on different grounds. In our opinion, Chatelain is estopped from claiming a credit or set-off of more than $1,000.00, that being the amount which was withheld pursuant to the agreement entered into between the parties on March 14, 1972. Plaintiff thus is entitled to recover at least $1,429.91 from Chatelain. Since Deville has not appealed or answered the appeal, however, the award made to it by the trial judge cannot be increased. The judgment of the trial court thus should be affirmed.
We have considered the circumstance that under LSA-C.C.P. art. 1005 a plea or defense of estoppel is a special defense which must be set forth affirmatively in the answer, and that in this case plaintiff Deville has not affirmatively set forth estoppel in any of the pleadings it has filed. We have decided, however, that for at least two reasons estoppel can be applied here even though it has not been specially pleaded by Deville.
In the first place, the principal issue before the trial court was presented by the petition of Deville and the answer of Chatelain. The question of whether the defendant was or was not entitled to a set-off was raised for the first time in his answer, and plaintiff Deville was not required to reply to that answer. Deville was not required to anticipate the defenses which the defendant would raise, and thus include in its petition pleadings to counter those anticipated defenses. The rule is that all pleas alleged by the defendant in answer to plaintiff's petition are deemed to be denied by plaintiff, and that plaintiff may assert in bar thereof estoppel or any other legal theory or principal applicable under the circumstances, without the necessity of replication or filing any other pleading. All allegations of defendant's answer are open to every objection of law and fact as fully as though specially pleaded by plaintiff. Liberal Finance Gentilly, Inc. v. Brister, 152 So.2d 331 (La.App. 1 Cir. 1963); McNabb v. Foodtown, Inc., Dean v. Orgeron, 195 So.2d 150 (La.App. 1 Cir. 1967); Airhart v. Airhart, 153 So.2d 140 (La.App. 3 Cir. 1963).
The second reason why estoppel may be applied here is that, even if plaintiff was obliged to specially plead it, the pleadings have been enlarged to include such a plea. Both parties introduced evidence and questioned witnesses extensively as to the agreement entered into by plaintiff and defendant on March 14, 1972, the issuance of defendant's check for $1,429.91, the subsequent stopping of payment on that check by defendant, the signing of the lien waiver by plaintiff pursuant to that agreement, *432 and the repairs made by plaintiff in accordance with the above mentioned agreement. No objection was made to any of that evidence, and the testimony was not admissible for any purpose other than to show estoppel or a compromise settlement. The pleadings thus were enlarged to include a special plea of estoppel by Deville, if such a pleading should have been required. See Edwards v. Edwards, 282 So. 2d 858 (La.App. 1 Cir. 1973).
The elements necessary for the application of the doctrine of estoppel "in pais," or equitable estoppel, are present here. A person who by his deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude or course of conduct and thereby cause loss or injury to the other. Humble Oil & Refining Company v. Baudoin, 154 So.2d 239 (La. App. 3 Cir. 1963); Babin v. Montegut Insurance Agency, Inc., 271 So.2d 642 (La. App. 1 Cir. 1973).
We are aware of the rule that estoppels are not favored in law. They will be applied, however, when the evidence warrants it and when the ends of justice demand it.
In the instant suit, Chatelain agreed to pay Deville the sum of $1,429.91 on March 14, 1972, and to pay him the remaining balance of $1,000.00 due on the contract price when Deville completed the additional work on the house which the parties agreed should be done. Chatelain delivered to Deville his check for $1,429.91, and in so doing he misled Deville into believing that he intended to discharge his obligation under the agreement. It is obvious that Chatelain was not in good faith, and that he never intended that Deville would receive the amount of that check.
Deville, believing that Chatelain was in good faith and that the check would be honored, signed a lien waiver surrendering his right to preserve a lien against Chatelain's property, and he incurred expenses in making the repairs which he had agreed to make. Deville thus was induced to surrender his right to a lien on the premises and to incur these additional expenses by Chatelain's act or conduct. Chatelain stopped payment on the check which he gave to Deville pursuant to that agreement, and he now denies liability to Deville for the amount of that check.
We hold that Chatelain is now estopped from denying his liability to Deville for the amount of that check, that is, $1,429.91. Chatelain, of course, has the right to question whether Deville has made the repairs which he agreed to make in order to receive the remaining $1,000.00 payment. The agreement, however, was that Deville was entitled to receive the amount of the check immediately, regardless of whether the agreed corrective work or any other work was or was not performed. Chatelain's agreement to pay that amount induced Deville to commit acts which will result in loss to the latter if the payment is not made. Under those circumstances, Chatelain is barred or estopped from denying liability for that part of plaintiff's claim.
Although we think Deville was entitled to judgment against Chatelain for at least $1,429.91, the trial judge rendered judgment in its favor for only $1,360.91, and Deville has not appealed nor has it answered the appeal. The judgment of the trial court cannot be amended by increasing the award made to the appellee. And, since the award cannot be increased, it would be useless for us to consider whether any part of the remaining $1,000.00 is due Deville. We conclude, therefore, that the judgment appealed from should be affirmed.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.
CULPEPPER, J., dissents and assigns written reasons.
*433 CULPEPPER, Judge (dissenting).
I agree with the majority that the trial judge erred in not allowing defendant credits for defects in construction which were proved but were not specifically alleged. In his answer and reconventional demand, the defendant specifically alleged some defects but did not allege others. The trial commenced on January 11, 1974. On that date defendant's expert, Mr. Griggs, testified as to the defects and the cost of correction specifically alleged by defendant. However, when Mr. Griggs commenced to testify as to other defects, which were not specifically alleged, plaintiff objected on the grounds that it enlarged the pleadings. The trial judge ruled that he would allow the testimony subject to the objection and would decide later whether an offset would be allowed for items not specifically alleged. No request was made by defendant to amend his pleadings to conform to the evidence, LSA-C.C.P. Article 1154. Nor was any request made by plaintiff for a continuance to enable him to meet any evidence introduced by defendant beyond the pleadings. Mr. Griggs then proceeded to testify on January 11 as to many defects and the cost of correction not specifically alleged in defendant's pleadings.
At the hour of adjournment on January 11, the case was continued until January 23 for completion of the trial. On January 18 plaintiff filed a motion for a court order to allow his expert witness, Mr. Joseph Johnson, to inspect defendant's home for the purpose of testifying as to any defects. Pursuant to this motion, Mr. Johnson actually inspected defendant's home.
When the trial was resumed on January 23, plaintiff's own expert, Mr. Johnson, substantially corroborated defendant's expert as to the defects, both those which were specially pleaded in defendant's answer and reconventional demand and those which were not so pleaded.
In his written reasons for judgment, the district judge ruled that he would not consider those defects not specifically alleged in defendant's pleadings. He relied on LSA-C.C.P. Article 861, which provides that items of special damage shall be "specifically alleged". Accordingly, the district judge found plaintiff was entitled to the sum of $2,241.91 prayed for, subject to a credit of $1,069 representing the cost of correcting the defects specifically alleged by defendant. This, judgment was rendered for the sum of $1,360.91.
I think the ruling in Budget Plan of Baton Rouge, Inc. v. Talbert, La., 276 So.2d 297 (1973) is applicable here. In that case, as in the present matter, the plaintiff was not actually surprised by the defense which was proved but not alleged. The present case is even stronger, in that here the plaintiff did not even argue in the trial court, nor in the Court of Appeal, that he was taken by surprise. I find the following language from the Budget Plan case particularly applicable here:
"Notwithstanding the established system of fact pleading in our State, when all facts have in reality been disclosed, as here, and fair notice is given to all parties with no surprise claimed, substance would be sacrificed for wooden adherence to technicality to insist that a judgment rendered on this basis cannot stand."
Although the majority apparently agrees the trial judge should have considered the defects which were proved but not specifically alleged, they have decided the case on the basis that the defendant is estopped to claim credit for the defects. This was not pleaded by plaintiff, was not argued in the trial court, was not mentioned by the district judge and has not even been argued by counsel on appeal. The majority, on its own motion, has adopted this theory. It is my view that regardless of whether the pleadings are sufficient to decide the case on the basis of equitable estoppel, the evidence clearly shows that the doctrine has no application here.
*434 Plaintiff's original petition is simply a suit on a contract. Plaintiff alleges that after the house was completed there was a dispute as to defects in construction. The parties agreed to settle their differences for $2,249, and this is the contract on which plaintiff filed suit. As part of the agreement, defendant gave plaintiff a check for $1,429 and held out $1,000 which was to be paid when the defects were corrected. Plaintiff alleged in his petition that he had corrected all of the defects but that defendant had failed to pay by stopping payment on the check in the sum of $1,429 and by failing to pay the additional sum of $1,000 which was held out. There were no allegations of fraud or bad faith.
Defendant answered, alleging that the defects had not been corrected. The issue on which the case was pleaded and tried was whether the defects were corrected. The evidence shows clearly that they were not. The trial judge so held.
The majority opinion states that the defendant was in bad faith, and that he misled the plaintiff into signing a lien waiver by delivering to plaintiff the check for $1,429, intending all the time to stop payment on the check. This is a harsh and totally unfounded accusation.
There is no testimony to support the argument that defendant gave plaintiff the check for $1,429 in bad faith for the sole purpose of inducing plaintiff to sign the lien waiver. Actually, both Mr. Deville and defendant testified the lien waiver was signed for their mutual benefit. Plaintiff signed the lien waiver so that defendant could borrow the $21,500 and pay it to plaintiff. This is made clear by the following testimony of Mr. Deville himself:
"Q. Now, why did you sign a no-lien statement before you were paid?
"A. You've got to sign it for the Savings & Loan to pay.
"Q. But in effect, there were still charges due on this house, were there not?
"A. Yes, there were.
"Q. So you signed this strictly to accommodate you and Mr. Chatelain and Avoyelles Savings & Loan, because that's the way it's generally done; is that right?
"A. That's right; yes Sir.
"Q. And the same thing, if Mr. Chatelain may have signed some kind of acceptance, that's generally the way things are done, because you've got to get the loan closed; isn't that right?
"A. That's right.
"Q. And many times an acceptance may be signed when the party still has some problems with the contract; isn't that right?
"A. That's right."
There is not one shred of testimony by Mr. Deville that defendant was guilty of any fraud or bad faith. Mr. Deville has never contended that this is anything more than a dispute between a contractor and a homeowner as to alleged defects. Yet the majority has branded defendant as a fraud and a person who is guilty of bad faith. The law is too well settled to require the citation of authority, that fraud and bad faith are never presumed and must be clearly proved.
The equities of this case clearly support the defendant. The defects in construction are proved not only by the expert witness for the defendant but are corroborated by the expert witness called by the plaintiff. The defendant is being denied credit for these proven defects on the basis of an estoppel which has not been pleaded, proven or even argued by the plaintiff.
For the reasons assigned, I respectfully dissent.