346 So.2d 798 (1977)
Larry MARTINEZ
v.
THERMA-KING SALES AND SERVICE DIVISION OF TRANSPORT REFRIGERATION OF LA., INC.
No. 11259.
Court of Appeal of Louisiana, First Circuit.
May 9, 1977.
Rehearing Denied June 13, 1977.
*799 Talbot, Sotile & Carmouche, Donald T. Carmouche, and Jon F. Waquespack, Donaldsonville, for plaintiff-appellee.
Cronvich & Wambsgans, Richard M. Michalczyk, Metairie, for defendant-appellant.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
COVINGTON, Judge.
This is an appeal from a judgment awarding damages for conversion[1] of the plaintiff's property. We affirm.
The plaintiff, Larry Martinez, resident of Assumption Parish, brought this action against the defendant. Therma-King Sales and Service, Division of Transport Refrigeration of Louisiana, Inc., domiciled in Jefferson Parish, alleging that Therma-King converted to its own use a cooling unit that was attached to Martinez's tractor-trailer which was located in Assumption Parish, Louisiana. The dispute arose over a repair bill that the defendant submitted after making certain repairs on the compressor, a component part of the cooling unit.
The defendant was called to repair the unit because it was "not cooling." The tractor-trailer could not be driven to the defendant's shop because the trailer was stuck in the mud in Assumption Parish. Therefore, a representative of the defendant went from Jefferson Parish to Assumption Parish, checked out the unit, and determined that the trouble was a "burned-out" compressor. The defendant then proceeded to remove the compressor and bring it to its shop for repairs. At the time, the defendant informed the plaintiff that the price would be approximately $400.00 to rebuild the compressor. The testimony is in dispute concerning whether or not the defendant gave to the plaintiff an approximate final price of about $900.00, which would be determined by the time required to complete the job. The plaintiff denied that he was informed that there would be a "final price."
In any event, after the repair work was completed and the cooling unit with the rebuilt compressor was installed, the defendant presented a bill for $941.98. However, the plaintiff's agent did not have that much money. The defendant then removed the entire cooling unit, and took it back to its shop in Jefferson Parish. Although only the compressor had been carried to defendant's shop for repairs, the defendant claimed to have worked on the entire unit to complete the necessary repairs and thereby attempted to justify its removal of the complete unit.
This "repossession" took place on May 19, 1975, without the permission or authorization from the plaintiff and without the repairer filing legal proceedings. Subsequently, the plaintiff made demands for return of his cooling unit, but to no avail. This suit followed.
The defendant responded to the plaintiff's action for damages by bringing a writ *800 of sequestration in Jefferson Parish. The plaintiff filed an answer in the sequestration action, and paid off the amount of the demand therein in order to prevent a sheriff's sale of his property.
The facts of this case fit the classic definition of "conversion", unless the repairman's privilege clothed the defendant with authority to take and hold possession of the cooling unit belonging to the plaintiff.
Conversion is defined as "a distinct act of dominion wrongfully exerted over another's property in denial of or inconsistent with the owner's rights therein." Lincecum v. Smith, 287 So.2d 625, 627 (La. App. 3 Cir. 1973), writ ref., 290 So.2d 904 (La.1974).
The repairman's privilege upon which the defendant should have relied is contained in LSA-R.S. 9:4502, which provides, in part, as follows:
A. "Any person engaged in the making or repairing of movable goods . . . equipment . . . machinery, or movable objects or movable property of any type or description, has a privilege on the thing for the debt due him for materials furnished or labor performed. This privilege is effective for a period of ninety days from the last day on which materials were furnished or labor was performed, if the thing affected by such privilege is removed from the place of business where such labor was performed or materials furnished . . . .
B. "This privilege may be enforced by the writ of sequestration, without the necessity of the creditor furnishing security therefor, if the debtor is first given ten days' written notice by registered mail. . . ."
Other relevant statutes are:
LSA-R.S. 9:4501, which provides, in part:
"Any person operating a garage or other place where automobiles or other machinery are repaired, or parts therefor are made or furnished, has a privilege upon the automobile or other machinery for the cost of repairs made, parts made or furnished, and labor performed. . . For the purposes of this section, it is immaterial where the automobile or other machinery may have been located at the time or by whom the parts may have been attached.
"This privilege may be enforced by the writ of sequestration, without the repairman having to furnish security therefor. . . ."
LSA-C.C. art. 3217(2):
"The debts which are privileged on certain movables, are the following:
* * * * * *
"2. The debt of a workman or artisan for the price of his labor, on the movable which he has repaired or made, if the thing continues still in his possession."
See Davis v. Chube, 256 So.2d 756 (La. App. 1 Cir. 1971), writ ref., 261 La. 232, 259 So.2d 76 (1972).
It is also pertinent to note that all statutory liens and privileges are stricti juris. They are in derogation of common rights and, as with the statutes creating them, they are strictly construed. Their effect may not be extended by analogy or implication. Domingue v. Huval, 261 So.2d 88 (La.App. 3 Cir. 1972); Hicks v. Tate, 7 So.2d 737 (La.App. 1 Cir. 1942).
In this case, LSA-R.S. 9:4502 adequately protected the defendant. It did not have to "reclaim" the thing to protect its rights. Under this statute, it is not necessary that the thing repaired remain in the repairman's custody or place of business. Even without retaining possession, the repairman has 90 days after the repairs have been made to assert its privilege. This is accomplished by giving the debtor 10 days' written notice by registered mail, and then enforcement of the privilege by writ of sequestration without the necessity of furnishing a bond.
The repairman, under the law, was required to use legal machinery in seizing the repaired thing and in asserting its privilege.
*801 It chose not to do so; instead, it resorted to self-help and removed the cooling unit to its shop. Had the repairer properly used 9:4502, the thing repaired would then be conserved under the auspices of the law until the repairman had an opportunity to prove the indebtedness and judgment on the merits had been rendered.
In view of the requirement that these privilege statutes must be strictly construed, we hold that a repairman has no right to merely reclaim possession of a repaired thing once it has left his possession his proper remedy is to assert his privilege through legal machinery during the statutory period.
The evidence presented supports the trial court's finding that there was a wrongful taking of the cooling unit by the defendant and, also, a refusal to accede to the plaintiff's demand that it be returned. The defendant can not justify its action by claiming a privilege on the property; the repairman's privilege does not grant self-help to the repairman. It grants him the liberal legal remedy of sequestration without bond. In the instant case, the defendant chose to remove the cooling unit from Assumption Parish to Jefferson Parish before availing itself of its legal remedy. It did so at its own peril and must suffer the consequences of its actions.
The trial court awarded $1,500.00 in general damages. We do not find this award to be an abuse of his "much discretion." LSA-C.C. art. 1934(3); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Vercher v. Toda Enterprises, Inc., 216 So.2d 318 (La.App. 3 Cir. 1968). The evidence shows that the cooling unit was out of operation as a result of the defendant's wrongful acts from May 19, 1975, to the end of October, 1976, which was during a substantial part of plaintiff's marketing season.
For the reasons assigned, the judgment of the trial court is affirmed at the defendant-appellant's cost.
AFFIRMED.
NOTES
[1] Although this is a common-law legal term, and any recovery is actually founded on LSA-C.C. art. 2315, it has become, unnecessarily, of common usage in our jurisprudence.