COVINGTON, Judge,
dissenting:
Under the lien statute, LSA-R.S. 9:4801.1, when the lessor of the leased equipment proves that the equipment was located upon and remained on the landowner’s property during the period of time for which the lien is claimed, there is formed “a rebuttable presumption” that the leased equipment was actually used in the construction work on the landowner’s property.
The trial judge made factual findings that the plaintiff had shown that the leased sandblasting equipment was placed upon and remained on the landowner’s property, but that the lessor had made certain representations to the landowner which caused it to allow the equipment to remain on its property although the lessee-contractor had abandoned the job, and which showed that the lessor was assisting the lessee beyond the mere leasing of the equipment. The trial judge then held that, based on these facts, the landowner, Lard, had successfully rebutted the presumption of LSA-R.S. 9:4801.1 so that the lessor, Marrs, was not entitled to a lien on Lard’s property.
The testimony of Marrs and Lard is in conflict. The trial judge chose to accept that of Lawson A. Lard, Jr., appellee’s president, over that of Jim Broussard, branch manager of Sam Marrs Equipment Company in Baton Rouge. Absent finding an abuse of the judge’s discretion, we should not disturb this determination of credibility of witnesses. Dyson v. Gulf Modular Corporation, 338 So.2d 1385 (La.1976); Rayner v. Rayner, 216 La. 1099, 45 So.2d 637 (1950).
The record reveals that the leased equipment was placed on Lard’s property. The requisite notice with a copy of the lease was sent to Lard. Upon receipt of the notice from Marrs of the lease, Mr. Lard immediately contacted the plaintiff; thereupon, Mr. Lard was informed of the purpose of the notice. After being informed that it was for the protection of plaintiff’s lien rights, Mr. Lard requested the plaintiff to remove the equipment from Lard’s property, stating to the plaintiff that Lard did not want to be liable for the rental of the equipment, as Lard had a contract with C. & J. Painting and Sandblasting Company for a fixed price. The plaintiff advised Lard not to worry, that the plaintiff was helping C. & J. get started in business. Later, Lard called the plaintiff to tell Marrs that the equipment was not properly operating, causing the work to be delayed. Lard experienced considerable difficulty in getting C. & J. to finish the work. C. & J. finally abandoned the job, necessitating that Lard get another contractor to complete the work. There was also another telephone call from the defendant Lard to the plaintiff about picking up the leased equipment, but Marrs refused to remove the equipment, informing Lard that its lease was with C. & J., not with Lard.
Despite the appellant’s contention, I do not feel that the trial judge erred in considering evidence as to the performance of the construction contract by C. & J., since the lessee’s performance was an integral part of the entire transaction, and the relationship between Marrs and C. & J. was more than mere lessor-lessee.
From his consideration of the foregoing factual situation, the trial judge expressed his opinion as follows:
“The Court is of the opinion that the plaintiff was assisting the defendant, C & J Painting and Sandblasting Company, beyond the mere rental of equipment to it. Further, that Mr. Lard would never have allowed the equipment to remain on his property after the first phone call, if it were not for the representations of the plaintiff.
*596 “Liens are stricti juris and must be strictly construed against the lien holder. R.S. 9:4801.1 was added by Act 673 of 1975. It grants a privilege to the lessor of movable property or equipment used in construction or repair of any structure. Paragraph A thereof establishes a rebut-table presumption that the leased or rented movable property was actually used in the repair of the structure upon proof that said movable property was upon the construction site.
“In the instant case there is no question that the rented property was placed on the construction site. However, it is the opinion of the Court that the defendant L. A. Lard Oil Company, Inc. has overcome the presumption as to the continued use of the leased property on their premises. The lessee of the equipment abandoned the job. It is the opinion of this Court that the burden thereupon shifted to the plaintiff to come forward with proof as to the continued actual use of the leased property in the repair of the tanks in order to establish liability upon the landowner. While the statute grants the privilege, it is still incumbent upon the plaintiff, lessor, to establish the amount which is due. This the plaintiff has failed to do in the instant case.”
While I am somewhat concerned with the trial judge’s use of the term “continued use” of the leased equipment in his opinion, I believe, when the term is construed in context, that the trial judge was merely re-phrasing the statutory requirement of “use” during the period of time for which the lien is claimed and did not infer that only continued use of the lease equipment would meet the requisites of LSA-R.S. 9:4801.1. What the trial judge actually concluded was that Marrs had satisfactorily established the presumptive statutory requirements; but that Lard had successfully rebutted the presumption, so that Marrs was not entitled to a lien on the Lard property. I agree that Lard overcame the rebuttable presumption from the facts as found by the trial court.
Moreover, I am of the opinion that Lard’s plea of estoppel should be sustained. The doctrine of estoppel is applicable to this factual situation. A person who by his deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude or course of conduct and thereby cause loss or injury to the other. G. J. Deville Lumber Company, Inc. v. Chatelain, 308 So.2d 428 (La.App. 3 Cir. 1975), writ denied, 313 So.2d 239 (La.1975). The actions of the plaintiff misled Lard into believing that the plaintiff was actively interested in seeing that C. & J. completed this particular job, and that defendant would have no personal liability for rental payments on the equipment. The plaintiff can not now take an inconsistent position so as to cause loss to Lard. No one would normally expect to be held personally liable for rental charges under these circumstances so as to have a statutory lien attached to his property. Liens are stricti juris and must be strictly construed against the lien holder. Gauguin, Inc. v. Addison, 288 So.2d 893 (La.App. 1 Cir. 1973), writ denied, 293 So.2d 167 (La. 1974).
Furthermore, I feel that Marrs, through its actions, waived its lien rights on the Lard property. While it is true that under its contract with C. & J., Lard was not is a position to order C. & J. off the job when it received notice from Marrs of its claim of lien rights, Lard could have taken steps under the lien statute to protect itself; and undoubtedly would have done so except for the assurances of Marrs.
LSA-R.S. 9:4801.1 specifically gives the landowner the right to terminate the lien rights of the lessor under certain circumstances by the giving of written notice of nonuse of the equipment to the lessor, in the following language:
“If the leased or rented movable property is abandoned by the lessee or renter, or is not actually being used in the erection, construction, repair, or improvement of immovable property, or in connection with the erection, construction, repair or improvement of any building, structure, *597 or other immovable property, then in that event, the owner, his authorized agent or representative, or any person with whom the owner has contracted shall give the lessor or renter of the movable equipment or property written notice of the nonuse of the equipment, in which case the lessor or renter is hereby granted the right to take physical possession of the property or equipment leased or rented immediately upon receipt of the written notice. As of the date of the giving of written notice to the lessor or renter as provided by this Subsection, the privilege provided by the Section shall terminate as to the particular lease or rental transaction involved.”[1]
As stated in Wardlaw Bros. Garage, Inc. v. Thomas, 19 La.App. 241, 140 So. 108 (2 Cir. 1932):
“Liens may be lost in a number of ways; that is, by payment of the claim secured, by waiver expressly agreed to, or by waiver arising by implication from the facts and circumstances of the particular case.”
In the instant case, I find that the lien rights of Marrs were lost by implication from the peculiar facts and circumstances herein. The plaintiff in effect told Lard that the lease was between Marrs and C. & J. and that Marrs was not looking to Lard for payment. The facts, as found by the trial judge as stated above and with which finding I agree, support a finding that there was a waiver of its lien rights by Marrs. The conduct of Marrs “was wholly inconsistent with an intention to assert the lien, but was fully consistent with its waiver.” Wardlaw Bros. Garage, Inc. v. Thomas, supra. See also Martinez v. Therma-King Sales and Service Division, 346 So.2d 798 (La.App. 1 Cir. 1977), writ denied, 349 So.2d 884 (La.1977); Babineaux v. Grisaffi, 180 So.2d 888 (La.App. 3 Cir. 1965).
Accordingly, the trial court’s judgment rejecting the demands of the plaintiff, Sam Marrs Equipment Company, although based on different reasons, was correct in its result.
Therefore, I respectfully dissent.

. See 9:4801.1 C.